# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1225
No. 99-1673

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Dale Lynn Ryan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 12, 2000

Filed: September 8, 2000

_____

Before WOLLMAN, Chief Judge, MORRIS SHEPPARD ARNOLD, and MURPHY,
Circuit Judges.

_____

WOLLMAN, Chief Judge.

Dale Lynn Ryan appeals from the district court's denial of his 28 U.S.C. § 2255
petition for postconviction relief and from its denial of his motion for reconsideration.
We reverse and remand.

# I.

On January 1, 1990, fire engulfed the Ryan Fun and Fitness Center (the Fitness Center), in West Burlington, Iowa, killing two volunteer firefighters who were attempting to extinguish the blaze. After an extensive investigation, Ryan, the manager of the Fitness Center, was charged with violating 18 U.S.C. § 844(i). Section 844(i) makes it a federal crime to "maliciously damage or destroy . . . by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."

At trial, the government introduced a variety of evidence in an attempt to satisfy the interstate commerce requirement of section 844(i). The government showed that the Fitness Center was owned by Ryan's father, Ronald D. Ryan, a Kansas resident, and that it was leased to Ryan Air Services, Inc., a Kansas shell corporation controlled by Ron Ryan. The government also established that the Fitness Center conducted business until December 6, 1989, at which time Ron Ryan ordered the Fitness Center closed, and that shortly thereafter Ryan and his father began taking steps to sell the business. They took a photographic inventory of the building's interior and had a real estate agent inspect the property for purposes of determining its market value. The property, however, was not formally listed for sale or rent at the time of the fire. Finally, the government introduced evidence that the Fitness Center received natural gas from an out-of-state provider.

At the close of the evidence, the district court instructed the jury that it should find that the Fitness Center was "used in an activity affecting interstate commerce" if it found that on January 1, 1990: (1) the "[Fitness Center] was owned by Ronald D. Ryan, a resident of Kansas, and leased by him to Ryan Air Services, Inc., a Kansas Corporation," or (2) "the [Fitness Center] was supplied with natural gas used to heat the building, and such natural gas was supplied from outside of the state of Iowa." Jury

Instruction Number 10. Ryan's counsel did not object to this instruction. The jury returned a verdict of guilty, and Ryan was sentenced to 328 months in prison.

On direct appeal, Ryan urged, among other things, that there was insufficient evidence to support his conviction and that Instruction Number 10 failed to satisfy the interstate commerce element of section 844(i). A divided panel of this court rejected Ryan's arguments and affirmed his conviction. See United States v. Ryan, 9 F.3d 660 (8th Cir. 1993) (Ryan I). We granted rehearing en banc, but once again affirmed Ryan's conviction. See United States v. Ryan, 41 F.3d 361 (8th Cir.1994) (en banc) (Ryan II). A plurality of this court found that there was sufficient evidence to support the requisite link between the Fitness Center and interstate commerce, see id. at 364-65, and that neither portion of Instruction Number 10 was plainly erroneous under existing law, see id. at 366-67 (applying plain error review because of defense counsel's failure to object to Instruction Number 10). Ryan then moved for a new trial based on newly discovered evidence. The district court denied the motion, and we affirmed. See United States v. Ryan, 153 F.3d 708 (8th Cir. 1998) (Ryan III).

On April 18, 1997, Ryan filed the instant section 2255 petition. After denying the petition and Dale's subsequent motion for reconsideration, the district court granted Ryan a certificate of appealability on three issues. First, whether the fact that Ryan's attorney fees were paid by his father, who was also a suspect in the arson, gave rise to an actual conflict of interest that rendered Ryan's assistance of counsel ineffective. Second, whether Ryan was denied the effective assistance of counsel because of his attorneys' failure to object to Instruction Number 10. Third, whether Ryan was convicted for conduct that was beyond Congress's power to proscribe under the Commerce Clause, in light of the holding in United States v. Lopez, 514 U.S. 549 (1995), which was decided after Ryan's conviction was affirmed in Ryan II.

After hearing oral argument on these issues, we held the case in abeyance pending the Supreme Court's ruling in Jones v. United States, 120 S. Ct. 1904 (2000),

a case which involved a <u>Lopez</u> argument similar to that raised by Ryan. Following the Court's decision in <u>Jones</u>, in which the Court narrowly construed the scope of section 844(i) and did not reach the <u>Lopez</u> issue, we directed the parties to submit supplemental briefs discussing the impact of <u>Jones</u> on the present appeal. In his supplemental brief, Ryan contends that <u>Jones</u> makes clear that there was insufficient evidence introduced at trial to support his conviction under section 844(i), and that, even if there was sufficient evidence, Instruction Number 10 was plainly erroneous. We agree that there is insufficient evidence to satisfy the interstate commerce element of section 844(i), as construed in <u>Jones</u>. We thus conclude that because Ryan's conviction is for an act that section 844(i) does not make illegal, he is entitled to relief under section 2255. Accordingly, we limit our discussion to this single issue.

## II.

### A.

Dewey Jones was convicted under section 844(i) for tossing a Molotov cocktail into an owner-occupied private residence in Fort Wayne, Indiana. On appeal, Jones contended that section 844(i), when applied to the arson of a private residence not used for commercial purposes, exceeds Congress's authority under the Commerce Clause, as defined in <u>Lopez</u>. The Supreme Court, noting a circuit split regarding both this issue and the preliminary question of whether section 844(i) even reaches residential property, granted certiorari to determine whether "section 844(i) applies to the arson of a private residence; and, if so, whether its application to the private residence in the present case is constitutional." <u>See</u> <u>Jones</u>, 120 S. Ct. at 1908-09.

In addressing the question of the reach of the statute, the Court focused on section 844(i)'s requirement that the building at issue be "used in . . . any activity affecting . . . commerce." <u>See</u> <u>id.</u> at 1909. The Court observed that although the phrase "affecting . . . commerce," when unqualified, signals Congress's intent to invoke

-4-

its full authority under the Commerce Clause, Congress, in section 844(i), qualified this phrase with the term "used." See id. Accordingly, the Court concluded that when determining whether a building satisfies section 844(i)'s interstate commerce requirement, "the proper inquiry . . . 'is into the function of the building itself, and then a determination of whether that function affects interstate commerce.'" Id. at 1910 (quoting then-Chief Judge Richard Arnold's dissenting opinion in Ryan I, 9 F.3d at 675). Thus, a building is "'used' in an activity affecting commerce" only when, at the time of the fire, it is being "active[ly] employ[ed] for commercial purposes," which requires more than "merely a passive, passing, or past connection to commerce." Id.; see id. at 1912 ("We hold that [section 844(i)] covers only property currently used in commerce or in an activity affecting commerce.").

As so construed, the Court concluded that section 844(i) does not, by its terms, reach an owner-occupied residence not used for commercial purposes and therefore did not reach the residence in Jones. See id. at 1910. The Court reasoned that neither a private residence's receipt of natural gas from an out-of-state source, nor its status as collateral for a mortgage with an out-of-state lender, nor its being the subject of an out-of-state insurer's casualty insurance policy constitutes "active employment," as required by the "use" qualification of section 844(i). See id. at 1910. Furthermore, the Court found that the only active employment of the residence in Jones--the everyday living of a family--had no affect on, or even relation to, interstate commerce and therefore did not satisfy the "commerce" qualification of section 844(i). See id. Having found that section 844(i) does not reach an owner-occupied residence, the Court vacated Jones's conviction on that ground, making it unnecessary to consider his Lopez-based constitutional challenge to section 844(i).

As we recently noted in United States v. Rea, No. 98-2546, slip op. at 3 (8th Cir. Aug. 11, 2000), the decision in Jones "has substantially changed the law of the Eighth Circuit regarding the reach of § 844(i)." For example, prior to Jones we had upheld convictions under section 844(i) where a defendant destroyed a building that, although

commercial in nature, had only one established connection to interstate commerce--the receipt and use of natural gas from an out-of-state source. See United States v. Melina, 101 F.3d 567, 572 (8th Cir. 1996); United States v. Flaherty, 76 F.3d 967, 973 (8th Cir. 1996). Under Jones, such a passive connection to interstate commerce does not satisfy section 844(i)'s "use" requirement, which requires that property be actively employed in interstate commerce. See Jones, 120 S. Ct. at 1910. Noting this change brought about by Jones, Ryan argues that although the evidence at his trial may have been sufficient to satisfy section 844(i)'s interstate commerce requirement as we had construed it prior to Jones, such evidence is plainly insufficient in light of Jones's more restrictive view of section 844(i).

**B.**

Before we may reach the merits of Ryan's argument, we must determine whether there are any procedural impediments to our doing so. We find none. First, Teague v. Lane, 489 U.S. 288 (1989), does not bar the application of Jones to Ryan's claim for postconviction relief. Teague applies when the Supreme Court announces a "new constitutional rule of criminal procedure," generally barring the application of such a rule to cases on collateral review. See id. at 310-11. The Court has made clear, however, that Teague does not apply in those cases in which the Court determines the meaning of a criminal statute enacted by Congress, because such a decision involves the substantive reach of a federal statute, not a new rule of criminal procedure. See Bousley v. United States, 118 S. Ct. 1604, 1610 (8th Cir. 1998). Indeed, we have often applied Bailey v. United States, 516 U.S. 137 (1995), in which the Court defined the reach of 18 U.S.C. § 924(c)(1) more narrowly than had our prior case law, to section 2255 claims for postconviction relief.[1] See, e.g., Swedzinski v. United States, 160 F.3d

_____

[1]In Bailey, the Supreme Court held that a conviction under 18 U.S.C. § 924(c)(1) for the "use" of a firearm during and in relation to a drug trafficking crime requires

498, 500 (8th Cir. 1998); Williams v. United States, 98 F.3d 1052, 1053-54 (8th Cir. 1996).  Thus, Jones may be applied retroactively.

Second, we construe the contentions raised in Ryan's direct appeal as constituting a challenge to the sufficiency of the evidence adequate to preserve that issue for review in the present action.

## C.

We turn, then, to the merits of Ryan's contention that there is insufficient evidence in the record to satisfy section 844(i)'s interstate commerce element, as construed in Jones.  Evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "The standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly."  Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996).

Having reviewed the evidence in light of Jones, we conclude that, at the time of the fire, the Fitness Center was not being "'used' in an activity affecting commerce." Jones, 120 S. Ct. at 1910.  In so holding, we reject the government's contention that because Jones involved residential rather than commercial property, its holding is inapplicable to the Fitness Center.  Rather, the Court, agreeing with the government's observation to that effect, noted that "§ 844(i) excludes no particular type of building

---

evidence of "active employment" of the firearm by the defendant. See Bailey, 516 U.S. at 143.  In so holding, Bailey overruled our prior decisions affirming section 924(c)(1) convictions of defendants who merely stored firearms at their residences to protect drugs or proceeds.  See United States v. Harris, 10 F.3d 596, 597 (8th Cir. 1993) (listing cases).

(it covers 'any building')." Id. Whether section 844(i) applies to a building thus depends on whether the building is being "'used' in an activity affecting commerce." Id. See Rea, slip op. at 4 (noting the broad sweep of the Court's holding in Jones that "*all* buildings must be 'used in' commerce in order to meet the requirements of § 844(i)").

The evidence adduced at trial is insufficient to satisfy section 844(i)'s interstate commerce requirement, as construed in Jones. That the Fitness Center was owned by an out-of-state resident does not establish the requisite nexus. It can hardly be said that the mere status of being owned ("Every building is owned by someone . . . ." Ryan II, 41 F.3d at 369 (Arnold, C.J., dissenting)) constitutes "active employment," as required by section 844(i)'s use qualification. Cf. Jones, 120 S. Ct. at 1190 (the fact that a building is collateral for an out-of-state mortgage does not satisfy section 844(i)). Likewise, the fact that Ron Ryan leased the Fitness Center to his own shell corporation fails to create a sufficient nexus with interstate commerce. Although the Court in Russell v. United States found that an apartment building that was being "used as rental property" and which produced rental income was sufficiently connected to interstate commerce for purposes of section 844(i), see 471 U.S. 858, 859 (1985), the Fitness Center was not similarly used at the time of the fire. Ron Ryan was holding the Fitness Center through the formality of a lease agreement with his wholly owned company. Such a passive legal arrangement does not transform an otherwise unused building into actively employed property sufficient to satisfy section 844(i)'s interstate commerce element. See Ryan II, 41 F.3d at 369 ("That the Kansas owner, for business purposes of his own, leased the property to his controlled Kansas corporation adds nothing." (Arnold, C.J., dissenting)).

Furthermore, the evidence pertaining to the Fitness Center's closing and its potential sale does not satisfy section 844(i). After thoroughly reviewing this evidence in Ryan II, a plurality of this court concluded that the Fitness Center "was about to be

placed on the market for sale" and that it had the "potential for ready reentrance as a functioning business in the commercial marketplace." <u>Ryan II</u>, 41 F.3d at 365. These findings make clear that the Fitness Center was not "currently used in commerce or in an activity affecting commerce," <u>Jones</u>, 120 S. Ct. at 1912, and that it merely had a "past connection to commerce," which is insufficient under <u>Jones</u>. <u>Id.</u> at 1910. Similarly, the bare fact that the Fitness Center was marketable does not constitute active employment for commercial purposes. If this were sufficient to create an interstate commerce nexus under section 844(i), the statute would encompass all property, for "[a]ll property will sell at some price." <u>Ryan II</u>, 41 F.3d at 369 (Arnold, C.J., dissenting).

Finally, the Fitness Center's receipt of natural gas from an out-of-state provider constitutes a "passive connection" to commerce and thus fails to show a sufficient interstate commerce nexus. <u>See</u> <u>Jones</u>, 120 S. Ct. at 1190.

In sum, we conclude that there is insufficient evidence to satisfy the interstate commerce requirement of section 844(i), an essential element of this statute. Thus, because Ryan stands convicted for conduct not prohibited by section 844(i), we must reverse the judgment.

The judgment is reversed, and the case is remanded to the district court with directions to vacate the conviction and dismiss the indictment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-