# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1432

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Bruce Oleson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 8, 2002

Filed: November 20, 2002

_____

Before HANSEN, Chief Judge, and HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HEANEY, Circuit Judge.

Bruce Oleson was convicted of conspiracy to distribute methamphetamine and marijuana, possession of methamphetamine and marijuana with intent to distribute, and possession of a firearm as an unlawful user of controlled substances.[1] He contests the sufficiency of the evidence on each conviction, and also contends the

_____

[1]Oleson was also convicted of simple possession of amphetamine, but does not contest this conviction on appeal.

district court[2] erred in: denying his request for a hearing on his defective search warrant claim; admitting evidence that was not directly connected to him; and determining his sentencing offense level. We affirm.

## BACKGROUND

On December 10, 1999, a search warrant was executed on Bruce Oleson's property. His property included a small dwelling, a number of outbuildings, and a tract of land. The search uncovered twelve guns, a scale, 2.33 grams of amphetamine, 38.15 grams of methamphetamine, and several pounds of marijuana.

On December 16, 1999, Oleson was charged in state court with a number of offenses related to the execution of the above-referenced search warrant. These charges were dismissed by the state on August 31, 2000. Oleson was then charged with federal violations on May 21, 2001. He went to trial on all counts.

At trial, Dixie Rodgers testified that she helped to arrange for Oleson to sell methamphetamine to Gil Gavronsky. According to Rodgers, Gavronsky, who had died by the time of trial, did not use methamphetamine himself, but wanted to distribute the drug in order to make his business more financially stable. Over the next several weeks, Gavronsky made six to eight trips to Oleson's residence, each time purchasing one to two ounces of methamphetamine for roughly $1,100 per ounce.

Tracy Slycord testified that Oleson was his steady source of drugs beginning in 1997. As Slycord's habit intensified, the amount of drugs he would buy increased.

_____

[2]The Honorable Michael J. Melloy, United States District Court for the Northern District of Iowa. Judge Melloy has since been appointed to the United States Court of Appeals for the Eighth Circuit.

Eventually, he was buying one to four ounces of methamphetamine at a time, usually at a price of $1,000 to $1,200 per ounce. He testified that he got the drug to support his habit, but would also sell it. Stacey Carroll-White, an acquaintance of Rodney McAlister and Tracy Slycord, testified that McAlister sold marijuana and methamphetamine, and that he would get his drugs from Oleson. She further stated that she would regularly see McAlister in possession of four ounces of methamphetamine.

Part of the government's physical evidence at trial consisted of drugs that were seized from McAlister and Slycord. There was no evidence that any of these drugs were bought from Oleson, and Slycord affirmed at trial that the drugs were purchased from a different dealer.

## DISCUSSION

## I. SUFFICIENCY OF THE EVIDENCE

Oleson claims that the evidence was insufficient to convict him of conspiracy, possession with intent to distribute methamphetamine and marijuana, and possession of a firearm while an unlawful user of controlled substances. In reviewing the sufficiency of the evidence,

> we view the evidence in a light most favorable to the verdict, giving it the benefit of all reasonable inferences. Reversal is required only where no reasonable jury could have found a defendant guilty beyond a reasonable doubt. "[T]he standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly."

United States v. Maynie, 257 F.3d 908, 916 (8th Cir. 2001) (citations omitted).

To support a conspiracy conviction, the government must show that: a conspiracy existed for an illegal purpose; the defendant knew of the conspiracy; and the defendant knowingly joined in it. Id. While "[e]ither direct or circumstantial evidence can provide the basis for a conviction," United States v. Jimenez-Perez, 238 F.3d 970, 973 (8th Cir. 2001), evidence in a conspiracy case will often be circumstantial due to an illegal conspiracy's "necessary aspect of secrecy," United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000) (quoting United States v. Gooden, 892 F.2d 725, 729 (8th Cir. 1989)); see also United States v. Hoelscher, 914 F.2d 1527, 1533 (8th Cir. 1990) ("The agreement may be established by circumstantial evidence, as conspiracies seldom lend themselves to proof by direct evidence." (quoting United States v. Kaminski, 692 F.2d 505, 513 (8th Cir. 1982))).

Oleson suggests that the government did no more than establish a buyer/seller arrangement between himself and his customers. The evidence simply does not support such a conclusion. The government presented ample testimony that Oleson was selling methamphetamine to McAlister, Slycord, and Gavronsky. He would sell at roughly the same rate, between $1000 and $1200 per ounce, and usually sold at least an ounce at a time, and often up to four ounces at once. In one month, Gavronsky alone completed six to eight purchases of methamphetamine, each time obtaining one or two ounces of methamphetamine for resale. Testimony also established that Slycord's standard purchase from Oleson was an ounce of marijuana and four ounces of methamphetamine. Considering the amount of contraband in these transactions in combination with the testimony of frequent standardized sales, we conclude there is sufficient to support an inference that Oleson was part of the conspiracy to distribute narcotics. See United States v. Trotter, 889 F.2d 153, 156 (8th Cir. 1989) (holding even small amount of drugs may support inference of dealing when combined with other evidence consistent with distribution).

To convict Oleson of possession of methamphetamine and marijuana with intent to distribute, the government must show that Oleson possessed both drugs with

-4-

the intent to distribute them.  United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994).  Some factors that may lead to a conclusion that the drugs were meant for distribution include the quantity of drugs, packaging material, paraphernalia, and the presence of guns.  United States v. Lopez, 42 F.3d 463, 467 (8th Cir. 1994).

We have previously held that intent to distribute may also be inferred "solely from the possession of large quantities of narcotics."  United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994) (quoting United States v. Schubel, 912 F.2d 952, 956 (8th Cir. 1990)).  The search of Oleson's property uncovered several pounds of marijuana in a locked storage compartment.[3]  Even accepting Oleson's argument that much of the contraband was unmarketable due to water damage, the remaining dry marijuana totaled well over twenty pounds, with some being highly refined.  The amount alone here supports the conviction for possession with intent to distribute marijuana.

As for the methamphetamine, the police recovered over an ounce of the drug during the search of Oleson's property.  This same search produced twelve firearms and a scale.  Moreover, the government presented an overwhelming amount of testimony that Oleson was in the business of selling methamphetamine. Taken in the light most favorable to the jury verdict, this evidence is sufficient to sustain the conviction for possession with intent to distribute methamphetamine.

With regard to his conviction for being a drug user in possession of a firearm, Oleson again asks us to overturn the jury verdict.  In order to sustain a conviction, there must be evidence that Oleson was an unlawful user of or addicted to controlled substances during the same period of time that he possessed firearms.  18 U.S.C. § 922(g)(3); United States v. McIntosh, 23 F.3d 1454, 1458 (8th Cir. 1994).

---

[3]Although there is some question as to whether this storage compartment was actually on Oleson's property or his neighbor's, the key to it was found in Oleson's house, supporting the jury's conclusion that it was, in fact, his.

The evidence of firearm possession here is strong; the police found twelve guns on Oleson's property during execution of their search warrant. Although there was no direct evidence that Oleson was using drugs at the exact moment of the search, the government did show that a user quantity of amphetamine was laid out on Oleson's table, that he lived in the house alone, and that he often used drugs with his customers. These factors taken together support the jury's conclusion that Oleson was a drug user during the same period he possessed the guns.

## II.   DENIAL OF OLESON'S MOTION FOR A SUPPRESSION HEARING

Oleson next contends the district court erred in denying his motion for a hearing on whether the warrant issued in his case was defective. In order to receive a hearing on a defective warrant issue, the defendant must make some preliminary showing that the warrant application contained false statements or omissions that were material to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978).

Oleson claims the government intentionally misled the issuing judge in its warrant application. He directs us to a portion of the application which states that he had a history of using drugs since 1986, and that Stacey Carroll-White had gone with Tracy Slycord to get drugs from Oleson at one time. Neither statement is actually false: Oleson had in fact been convicted of possession of marijuana in 1986, and Carroll-White had gone with Slycord to get drugs from Oleson once–she just stayed in the vehicle while the transaction took place. Moreover, neither of these statements is so misleading as to be considered false.

As to material omissions, Oleson claims that the application should have stated that some of the sources of the applicant's information–a confidential informant, Slycord, and Carroll-White–were facing criminal charges. However, a fair read of the application in its entirety makes this point clear. The application states that Slycord

and Carroll-White's shared residence was raided on December 4, 1999, and that officers found a substantial amount of methamphetamine therein. It further states that the signing officer interviewed Carroll-White and Slycord two days later, on December 6. The issuing judge could reasonably infer that Carroll-White and Slycord were likely to face serious drug charges.

Moreover, even if the warrant application were corrected as Oleson suggests, probable cause would still exist to support its issuance. See United States v. Jacobs, 986 F.2d 1231, 1233-34 (8th Cir. 1993) (holding that hearing on warrant's validity required only where defendant can show warrant would not have established probable cause if corrected). The district court did not err in denying Oleson a hearing on this matter.

## III. CLAIMS OF EVIDENTIARY ERROR.

At trial, the district court admitted large quantities of drugs that had been seized from Slycord and McAlister. By all accounts, these drugs were not connected to Oleson. Oleson claims that the district court erred in admitting this evidence, and that the error was so grave as to mandate a new trial. We review the district court's evidentiary rulings for an abuse of discretion. United States v. Gonzales, 90 F.3d 1363, 1370 (8th Cir. 1996). "Even where we find that the district court has abused its discretion with respect to an evidentiary ruling, we will not reverse the conviction if the error was harmless." United States v. Lupino, 301 F.3d 642, 645 (8th Cir. 2002). "The test for harmless error is whether the erroneous evidentiary ruling had a substantial influence on the jury's verdict." Id. (quoting Peterson v. City of Plymouth, 60 F.3d 469, 475 (8th Cir. 1995) (internal quotation marks omitted).

We have serious concerns about the propriety of admitting drugs that, by all accounts, were not connected to the defendant. We note, however, that the jury was well aware that Oleson was not the source for these drugs, because Slycord testified

to that effect.  Given the strong weight of the other evidence of Oleson's guilt, we find that any error here was harmless, and does not necessitate a new trial.

## IV.    SENTENCING DETERMINATIONS.

The district court attributed a drug quantity of over 500 grams of methamphetamine to Oleson, leading to an offense level of 32.  Oleson claims he should have been sentenced using an offense level of 30.  We review a district court's sentencing determinations for clear error.  United States v. Frazier, 280 F.3d 835, 851 (8th Cir. 2002).

At sentencing, Oleson conceded that Dixie Rodgers had stated that she helped Gil Gavronsky buy at least eight ounces of methamphetamine from him.  Oleson further conceded that Tracy Slycord had admitted to buying at least eight ounces of methamphetamine.  Together, this amounts to sixteen ounces, or 453.6 grams of methamphetamine.  When the 38.5 grams of methamphetamine found during the search is added to this amount, Oleson is now responsible for 492.1 grams. Considering the other testimony of drug sales and the several pounds of marijuana that was seized, we cannot say the district court erred in attributing another eight grams of methamphetamine, or its marijuana equivalent, to Oleson.

## CONCLUSION

The evidence against Oleson was sufficient to sustain the convictions for conspiracy to distribute methamphetamine and marijuana, possession with intent to distribute methamphetamine and marijuana, and possession of a firearm by an unlawful user of controlled substances.  The district court did not err in denying Oleson a hearing on his defective warrant claim.  As to evidentiary error from admitting drugs not connected to Oleson, we find that any error was harmless. Lastly,

the district court's sentencing determination was correct.  Accordingly, we affirm the district court in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.