# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3175

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Southern |
| v. | * | District of Iowa. |
| | * | |
| Ira Jean Tensley, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 10, 2003

Filed:   June 26, 2003

_____

Before HANSEN[1], Chief Judge, LOKEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Ira Jean Tensley of conspiracy to distribute cocaine and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841and 846, and 18 U.S.C. § 2. The district court[2] sentenced Tensley to concurrent terms of 240

_____

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

[2] The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

months' imprisonment and 235 months' imprisonment respectively. On appeal, Tensley challenges the sufficiency of the evidence used to convict her on both counts. We affirm.

## I.

### *Facts*

Seven witnesses provided the bulk of the evidence against Tensley. These seven witnesses–Harold Bateman, Edwin Slaughter, John McDuffy, Sr., John McDuffy Jr., Grady Hickman, Lorenzo Nunn, and Alycia White–related similar accounts of Tensley's drug sales conducted from her residence in Davenport, Iowa. The sales occurred between January 1997 and March 24, 2001, and concluded with Tensley's arrest. All seven witnesses testified that Tensley bought or sold cocaine or heroin to them at various times and in various amounts over the four years of Tensley's operation.[3] Some testified about Tensley's drug transactions with other

---

[3] Each of these witnesses engaged in drug transactions with Tensley from January 1997 until March 2001 as follows: for nearly two years until October 1999, Bateman sold three ounces of cocaine and two ounces of heroin per month to Tensley; from January 1997 until October 1999, Slaughter sold two ounces of cocaine and up to twelve grams of heroin per month to Tensley, and witnessed Bateman provide drugs to or pick up money from Tensley on about twenty-five occasions; in 1997 and 1998, Hickman sold one-eighth of an ounce of cocaine to Tensley on at least twelve occasions, and witnessed Tensley selling cocaine and heroine two to three times a week on a regular basis during that period; from April 1998 to August 1998, McDuffy, Sr. and Tensley bought and sold cocaine to each other on as many as thirty occasions, and dealt heroin on at least seven occasions, and McDuffy, Sr. saw Tensley sell drugs to others, including two customers McDuffy, Sr. sent to Tensley; from August 1998 to August 1999, Tensley sold cocaine to McDuffy Jr., varying in volume from one-fourth to one-half of an ounce, on about eight occasions, and saw Tensley sell drugs to others on those occasions; from April 1997 to approximately February 2000, Nunn sold to Tensley one-quarter to one-half of an ounce as many as twenty times, Tensley sold Nunn one-fourth of an ounce of cocaine two to three times, and Nunn witnessed Tensley selling cocaine or heroin to others over fifteen times; from April 1998 to March 2001, White sold cocaine to Tensley four

witnesses and about sales to additional unknown customers. Several witnesses observed Tensley mixing cocaine and heroin at her house, weighing the drugs on a small scale in her kitchen, and bagging the drugs in plastic bags for sale. They also saw Tensley use cocaine and heroin regularly at her residence.

In addition to these regular drug transactions, Tensley made special trips to procure drugs. Hickman testified that in June 1997, he made two trips to Chicago with Tensley to buy cocaine and heroin. On the first trip, Hickman, Michael Nunn, and Tensley drove to Chicago to pick up the drugs. According to Hickman, Tensley obtained a package that Tensley later told him contained heroin–but she was unable to complete the cocaine transaction. Hickman, based on his experience, estimated that the package contained approximately ten grams of heroin, an amount Hickman believed to be consistent with purchase amounts for heroin sales.

Hickman further testified that a couple of months later he, Nunn, Tensley, and a friend of Tensley's again drove to Chicago to buy drugs. Hickman testified that they went to the same location, and Nunn arranged for the purchase of one-half of a kilogram of cocaine –financed in part by $3,000 contributed by Hickman towards the purchase of the drugs. Hickman testified that Tensley transported the drugs back to Davenport in exchange for the cocaine.

McDuffy, Sr. also testified about one of Tensley's trips to Chicago. He observed Tensley transport two one-half kilogram packages of cocaine to Davenport. He believed this trip occurred in August 1998, and McDuffy, Sr. received one-half an ounce of the cocaine from Tensley after this trip.

---

to five times a week in amounts ranging from one-eighth of an ounce up to one ounce, and saw Tensley selling cocaine to others on ten occasions.

Scott County Deputy Michael Hill testified about interviewing Tensley on October 20, 1999. During the interview, Tensley admitted that she had, over several occasions, purchased one-fourth of a pound of cocaine from McDuffy, Sr., one-sixteenth of an ounce at a time. Tensley also admitted that she bought heroin from McDuffy, Sr., and that she mixed heroin and cocaine into "speedballs." Tensley further described that one to two years earlier, she and four others traveled to Chicago together to purchase powder cocaine. Tensley stated that they did not obtain any cocaine during the first trip. On a second trip, however, they drove to the same location in Chicago and Michael Nunn arranged for the purchase of a kilogram of cocaine for $12,000. According to Deputy Hill, Tensley also told him that Michael Nunn gave this cocaine to Tensley and Jones, which they transported back to Davenport. Once they successfully delivered the cocaine to Davenport, Tensley claimed she received $300 and Jones received some cocaine. Tensley admitted to Deputy Hill that she purchased one-quarter of an ounce of cocaine from Michael Nunn on three occasions.

Rock Island County Deputy Tom Shoemaker testified that he and other members of the task force discovered evidence of drug activity after the team conducted "trash pulls" from outside of Tensley's residence.[4] On January 14, 2001, members of the Davenport Police Department executed a search warrant at Tensley's residence. Officers seized possible drug paraphernalia,[5] and small amounts of substances that later tested positive for cocaine and heroin. Officer Gil Proehl

---

[4] On January 9, 2001, evidence pulled from the trash included numerous plastic baggies containing small amounts of substances that later tested positive for heroin and cocaine. Trash pulled on January 30, 2001, and February 6, 2001, revealed numerous baggies and other items.

[5] The seized items included three coffee grinders, sifters, partial sandwich baggies with the bottom corners torn off, a pharmaceutical fold, a black Tanita digital scale, aluminum foil, and other items.

testified that some seized items were consistent with the type of packaging used for illegal narcotics sales.

In her own defense, Tensley testified that she was addicted to cocaine and heroin. She admitted that she purchased drugs from Bateman and McDuffy, Sr. for personal use, but she disputed testimony that she resold those drugs. Tensley stated that she could only use up to fourteen grams of cocaine in one month. Tensley claimed that she purchased one-sixteenth of an ounce of cocaine seven or eight times from Bateman, but she denied buying three ounces per month because she could not personally use that much cocaine. She also denied buying two ounces of heroin a month and claimed that was much more than she could use. Tensley asserted that she bought one-eighth of an ounce of cocaine three times from Slaughter, but she denied that she bought two-and-a-half ounces a month as Slaughter stated. Tensley admitted that she bought amounts of one-sixteenth and one-eighth of an ounce of cocaine for personal use from McDuffy, Sr. and White, but denied ever buying any drugs from McDuffy, Jr. or Lorenzo Nunn. Tensley denied having any agreement with Michael Nunn or the government witnesses to distribute drugs. Tensley denied making the admissions described by Deputy Hill.

## II.
### *Standard of Review*

In determining the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Miller v. Lock*, 108 F.3d 868, 870 (8th Cir. 1997) (emphasis in original). We resolve evidentiary conflicts in favor of the government and accept all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Ryan*, 227 F.3d 1058, 1063 (8th Cir. 2000). "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *Id.* "If the

evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *United States v. Gillings*, 156 F.3d 857, 860 (8th Cir. 1998). "The standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly." *Ryan*, 227 F.3d at 1063.

## III.
### A.
### *Conspiracy to Distribute Cocaine*

Tensley first argues that the government's evidence was insufficient to prove that she conspired to distribute cocaine. She contends that, at most, the evidence showed that she had a prolonged drug addiction–an addiction that impelled her to buy drugs from various people. Tensley argues the evidence failed to establish a conspiracy because it lacked proof of any agreement between her and others to sell drugs. The government responds that it based its case on strong circumstantial evidence from credible witnesses. The jury, exercising its prerogative, chose to believe those witnesses as well the other evidence gained from the "trash pulls" and the search of Tensley's residence. This evidence, according to the government, amply supports a conspiracy conviction.

To support a conspiracy conviction, the government must show that: (1) a conspiracy existed for an illegal purpose; (2) the defendant knew of the conspiracy; (3) the defendant knowingly joined in it. *United States v. Oleson*, 310 F.3d 1085, 1089 (8th Cir. 2002). The government can make its conspiracy case with either direct or circumstantial evidence. *United States v. Jiminez-Perez*, 238 F.3d 970, 973 (8th Cir. 2001). Often, evidence in a conspiracy case will be circumstantial due to an illegal conspiracy's "necessary aspect of secrecy." *United States v. Robinson*, 217

F.3d 560, 564 (8th Cir. 2000).[6] A defendant's mere presence and knowledge that someone else who was present intended to sell drugs are insufficient to establish membership in a conspiracy. *United States v. Hernandez*, 299 F.3d 984, 988 (8th Cir. 2002). However, once a conspiracy's existence has been established, slight evidence connecting a defendant to it may be sufficient to prove the defendant's involvement. *Id.*

Seven different witnesses testified that Tensley agreed or acted with them to either purchase drugs, sell drugs to them, or sell drugs to others. In particular, testimony regarding the Chicago trips alone supports the jury's finding that Tensley conspired with various people to buy cocaine and heroin for personal use as well as resale. The jury weighed the testimony of these witnesses in conjunction with Tensley's statements to Deputy Hill and the evidence gleaned from the "trash pulls" and the search of Tensley's residence. It chose to believe the witnesses and, to Tensley's detriment, found she engaged in a conspiracy. Based upon our review, such a finding was a reasonable inference drawn from the evidence. Tensley's sole defense is that these witnesses were lying; however, the jury determined otherwise, and credibility assessments are the province of the fact-finder. *Hernandez*, 299 F.3d at 989; *United States v. Davis*, 103 F.3d 660, 674 (8th Cir. 1996). As such, based on the testimony alone, the jury's determination of Tensley's guilt is supported by the record.

## B.
### *Possession with Intent to Distribute Cocaine*

Tensley next argues that the evidence did not support her conviction for possession with intent to distribute. She states three bases for her argument. First, Tensley challenges the credibility of the government's witnesses based upon their plea

---

[6] *See also United States v. Hoelscher*, 914 F.2d 1527, 1533 (8th Cir. 1990) ("The agreement may be established by circumstantial evidence, as conspiracies seldom lend themselves to proof by direct evidence.")

agreements. Second, she contends the police seized no cocaine from her person or her home. And, finally, she argues that the items seized during the search were as consistent with drug use as they were with drug sales. As such, the evidence did not establish Tensley's guilt beyond a reasonable doubt.

To convict for possession with intent to distribute, the government need only show that the defendant possessed the drugs with the intent to distribute them. *United States v. Johnson*, 18 F.3d 641, 647 (8th Cir. 1994). Some factors that may lead to a conclusion that the drugs were intended for distribution include the quantity of drugs, packaging material, paraphernalia, and the presence of guns. *United States v. Lopez*, 42 F.3d 463, 467 (8th Cir. 1994).

We hold the evidence supports the conviction. The fact that her co-conspirators made plea agreements with the government does not in and of itself prevent their testimony from being credited by the jury. *See United States v. Cabrera*, 116 F.3d 1243 (8th Cir. 1997) (existence of plea agreements or offer of leniency in exchange for testimony is relevant for assessing credibility of witnesses, but it is within the province of the jury to make that assessment and resolve conflicting testimony). Deputy Hill testified that Tensley admitted that she used approximately fourteen grams of cocaine a month and that two ounces of heroin was more than she could use each month. However, the amount of drugs credited to Tensley far exceeded her admitted usage. As to the seized items, the jury resolved the conflicting hypotheses in favor of drug distribution rather than mere personal use, and we will not disturb their finding. *Gillings*, 156 F.3d at 860. Finally, based upon the volume of drugs Tensley bought each month from government witnesses, the jury could reasonably conclude that she possessed the excess drugs to sell to others.

For the reasons we have stated, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.