# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2176

_____

United States of America,           *
                                    *
              Appellee,             *
                                    *
Solomon L. Coffey, also known as    *
Solomon Murray, also known as Box,  *
                                    *
              Appellant.            *

_____

No. 04-2247                         Appeals From the United States
                                   District Court for the
_____                        District of Nebraska.

United States of America,           *
                                    *
              Appellee,             *
                                    *
Solomon L. Coffey, also known as    *
Levell Coffey, also known as Levell *
Murray,                             *
                                    *
              Appellant.            *

_____

Submitted:  November 16, 2004
    Filed:  January 21, 2005

_____

Before WOLLMAN, HEANEY, and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

Following a jury trial, Solomon L. Coffey was found guilty of conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1) and 846. The district court[1] sentenced him to 324 months in prison. On appeal, he argues that the evidence was insufficient to support his conviction, and that he was sentenced in violation of the Constitution. We affirm his conviction, but remand for resentencing.[2]

## BACKGROUND

We recount the evidence in the light most favorable to the jury verdict. United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). According to the testimony of several witnesses, Coffey bought and sold large quantities of crack cocaine in 2000 and 2001 throughout the Omaha, Nebraska area. Kevin Jones testified that he was indicted for conspiracy to distribute crack, and entered into a plea agreement, which required him to debrief fully and cooperate with law enforcement. Jones told the jury that he began buying crack from Coffey in 2000, and that he would purchase crack every few days from Coffey. Jones paid Coffey between $650 and $700 an ounce; he started out purchasing one and one-half or two ounces at a time, but soon increased his volume. Jones recounted making several purchases of six ounces of crack, and recalled twice buying nine ounces at a time. Jones himself was a dealer with

---

[1]The Honorable Laurie Smith Camp, United States District Court for the District of Nebraska.

[2]Coffey also appeals the district court's revocation of his supervised release on his 1995 federal conviction for possession with intent to distribute cocaine base. The court found that Coffey had violated his supervised release by committing the instant offense. Coffey argues that the court erred in so doing, because the evidence was insufficient to sustain this conviction. As detailed below, we disagree and therefore also affirm the revocation of his supervised release.

approximately fifty customers, and he would resell the crack he purchased from Coffey at a profit. Once, Coffey told Jones that Jones was one of Coffey's best customers because he bought so much crack. Jones estimated that in one year's time, he paid Coffey more than $300,000 for crack purchases.

Roderick Jennings, also a crack dealer, testified that he was in Omaha for roughly two to three months in the fall of 2001. Jennings came to Omaha as a fugitive, with charges pending in Colorado. He sought to deal crack in Omaha to support himself while on the run. Jennings met Coffey through a mutual friend, and Coffey agreed to sell Jennings nine ounces of crack. He bought nine ounces of crack from Coffey for $6,300 during their first deal. The crack was packaged in nine individual one-ounce bags. Four or five days later Jennings then bought another eighteen ounces from Coffey for a purchase price of $13,200. After another four or five days passed, Jennings purchased another eighteen ounces of crack from Coffey for the same price.

Jimmy Swain, another drug dealer, said that he started purchasing drugs from Coffey in approximately August or September of 2001. He testified that he only dealt with Coffey for about one and one-half weeks, while his main supplier was not available. He stated that during that time, he bought crack from Coffey in one-half ounce or one-ounce quantities. Swain testified that the crack he obtained from Coffey was prepackaged in smaller, seven-gram amounts. Swain recalled that Coffey once asked Swain to ride around with him to sell some crack. As they drove, Swain's acquaintances would ask Swain if he had any crack, and Swain would direct them to Coffey. Coffey possessed approximately eight quarter-ounce packages of crack during this encounter. Altogether, Swain estimated that he purchased as much as nine ounces of crack from Coffey. Swain advised the jury that he had pled guilty to conspiracy to distribute crack and had a cooperation agreement that could enable him to receive a sentence reduction if he testified truthfully.

Like Swain, Curtis Holmes pled guilty to conspiracy to distribute crack. Holmes received a 292-month sentence, but told the jury that he hoped that he would get a sentence reduction in exchange for the information he was providing to the government. Holmes met Coffey around June of 2001. They met one another through another crack dealer, who Holmes knew only as "E." Holmes recalled being present at an apartment with Coffey and another of their mutual suppliers, "Vinnie," in October of 2001. Holmes saw Vinnie measure out nine ounces of crack, wrapped as individual ounces. When Coffey arrived, Vinnie took Coffey into a bedroom, carrying the nine ounces of crack. When they emerged, Vinnie no longer had the drugs. Holmes witnessed this happen again about a week later, but this time Holmes saw Vinnie measure out fifteen to eighteen ounces of crack before disappearing into a bedroom with Coffey and the drugs. A few days following this encounter, Holmes was present at the apartment when Coffey arrived and gave Vinnie several thousand dollars in cash. Holmes opined that the money was payment for fifteen to eighteen ounces of crack Coffey had gotten from Vinnie a couple of days earlier.

Danae Scott was associated with Curtis Holmes, and was acquainted with Vinnie because he dated Scott's friend. Scott testified that she traveled with Vinnie to Omaha twice. Both times Vinnie met with Coffey. She corroborated Holmes's account of the transactions he saw: Coffey would arrive at Vinnie's apartment, Coffey and Vinnie would retreat to a bedroom, and then Coffey would leave shortly thereafter.

Coffey had three witnesses testify on his behalf. Greg Lloyd testified that Coffey was employed during the time he was alleged to be dealing drugs. He said that Coffey lived modestly and did not have extravagant clothes or cars, or lots of cash on hand. Glyniss Thompson testified that Coffey lived with her during the period of the indictment, worked, and did not drive a fancy car or wear fancy clothes. In fact, she said that Coffey had cars repossessed during their relationship because he could not pay for them. Lastly, Coffey's mother, Diane Coffey, testified on his behalf. She said

-4-

Coffey had a job and had trouble paying his bills. She also testified that she never saw Coffey in possession of drugs.

The jury convicted Coffey of conspiracy to distribute or possession with intent to distribute crack. The verdict form asked the jury to indicate what amount of crack was attributable to Coffey: less than five grams, between five and fifty grams, or fifty-plus grams. The jury checked the box for fifty or more grams. Although an offense like Coffey's involving fifty grams of crack would result in an offense level of 32,[3] the presentence report suggested holding Coffey responsible for approximately 2.7 kilograms of crack, with a resultant offense level of 38.[4] Coffey objected, arguing that there was insufficient evidence to calculate any quantity of drugs for his offense. The district court overruled Coffey's objection and adopted the presentence report's drug quantity calculation. With an offense level of 38 and a criminal history category of IV, Coffey's sentencing range was 324 to 405 months. Coffey was sentenced to 324 months in prison, and this appeal followed.

## ANALYSIS

"A conspiracy conviction will be upheld where the evidence shows that a conspiracy existed for an illegal purpose, the defendant knew of the conspiracy, and the defendant intentionally joined it." United States v. Cuervo, 354 F.3d 969, 985 (8th Cir. 2004). "[T]he government must show an agreement between at least two people, and that the agreement's objective was a violation of the law." Id.

As recounted above, the government's evidence showed that Coffey was deeply involved in a conspiracy to distribute crack. Jones, Jennings, and Swain were all drug dealers. Each testified that they bought large quantities of crack from Coffey,

---

[3]USSG § 2D1.1(c)(4).

[4]USSG § 2D1.1(c)(1).

and that each discrete sale involved more than a user quantity. Their testimony established that Coffey was responsible for the sales of several pounds of crack and received hundreds of thousands of dollars for his efforts. Jennings and Swain both stated that the crack they purchased from Coffey was already broken into smaller quantities. Thus, it was permissible for the jury to infer, due to the sheer size of the transactions and the way the drugs were packaged that these were not mere buyer/seller transactions. Accord United States v. Oleson, 310 F.3d 1085, 1089 (8th Cir. 2002) (upholding drug conspiracy conviction in light of large amount of contraband involved in sales and standardized transactions). On the contrary, the government presented evidence that Coffey would buy large quantities of crack from a distributor and then resell them to fellow dealers in packaging and amounts consistent with the further distribution of the drug.

Coffey asserts that the government's evidence must fail because it was contrary to the evidence that he maintained a modest, financially unstable lifestyle, and because the government's witnesses were biased against him. The "issue of witness credibility is virtually unreviewable on appeal because it is 'preeminently the job of the finder of fact.'" United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) (quoting United States v. E.R.B., 86 F.3d 129, 130 (8th Cir. 1996)); United States v. Dabney, 367 F.3d 1040, 1042-43 (8th Cir. 2004) (recognizing that an attack on the credibility of cooperating witnesses "resounds like a closing argument to a jury" and is typically not within the province of an appellate court to reconsider). Given our restrictive standard, Coffey's case does not present a compelling argument for acquittal based on witness credibility. While Jones and Swain had cooperation agreements, Jennings did not. All of them testified to essentially the same type of large-scale transactions. Holmes and Scott corroborated Coffey's drug dealing by their observations of Coffey's interactions with other suppliers. The fact that Coffey's witnesses disputed the government's case does not provide us with a basis to overturn the jury verdict.

Finally, Coffey claims that he was sentenced in violation of his Sixth Amendment right to a jury trial, as recognized in <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004). He argues that the district court impermissibly held him responsible for a higher drug quantity than the amount the jury attributed to him. Prior to sentencing, Coffey asserted that there was insufficient evidence to calculate any drug quantity against him. The district court overruled his objection and sentenced Coffey using an offense level applicable to 2.7 kilograms of crack, despite no jury finding in support of this amount.

Whether or not <u>Blakely</u> applied to the United States Sentencing Guidelines is no longer an open question: the Supreme Court has now held that it does. <u>See generally</u> <u>United States v. Booker</u>, 543 U.S. ___, 2005 WL 50108 (Jan. 12, 2005). <u>Booker</u> holds the mandatory guidelines scheme employed by federal courts is unconstitutional. <u>Id.</u>, 543 U.S. ___, slip. op. at 4-5 & n.1; 19-20 (Op. of Stevens, J., for the Court); 2005 WL 50108, at *5-6 & n.1; 15. Instead, the Guidelines are now "effectively advisory," and defendants such as Coffey who have preserved the issue are entitled to new sentencing proceedings.[5] <u>Id.</u>, 543 U.S. ___, slip. op. at 2 (Op. of Breyer, J., for the Court); 2005 WL 50108, at *16. We thus remand for resentencing in accordance with <u>Booker</u>.

## CONCLUSION

We affirm the district court's denial of Coffey's motion for acquittal, affirm the revocation of his supervised release due to the instant offense, and remand for reconsideration of his sentence.

_____

[5]We express no opinion on whether a sentence handed down under the mandatory Guidelines system is plainly erroneous, nor do we consider the outer limits of precisely what will preserve the issue.