# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2249

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff – Appellee, | * |
| | * |
| v. | * |
| | * |
| Joel Castro-Gaxiola, | * |
| | * |
| Defendant – Appellant. | * |

_____

No. 06-2258

_____

Appeal from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * |
| Reyes Guadalupe Martinez-Ruiz, | * |
| also known as Ray, also known as | * |
| Leonardo Garcia-Ruiz, | * |
| | * |
| Defendant – Appellant. | * |

_____

No. 06-2266

_____

United States of America,        *
                             *

        Plaintiff – Appellee,    *
                             *

        v.                    *
                             *

Armando Rodela-Aguilar,     *
                             *

        Defendant – Appellant.   *

_____

Submitted: November 16, 2006
Filed: March 13, 2007

_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Joel Castro-Gaxiola, Reyes Guadalupe Martinez-Ruiz, and Armando Rodela-Aguilar of conspiracy to distribute methamphetamine, and aiding and abetting with intent to distribute meth. Castro and Martinez were also convicted of aiding and abetting interstate travel in aid of a racketeering enterprise, and illegal reentry after deportation. Each appeals the district court's[1] denial of a motion for judgment of acquittal. Castro also appeals the ruling on his motion to suppress. Having jurisdiction under 28 U.S.C.§ 1291, this court affirms.

---

[1] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I.

This court reviews de novo the sufficiency of the evidence supporting a judgment. *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003). The evidence is viewed in the light most favorable to the verdict; conflicts are resolved in favor of the government; and, all reasonable inferences from the jury's verdict are accepted. *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002); *Washington*, 318 F.3d at 852. As the standard of review is strict, this court does not lightly overturn a jury's verdict. *Cruz*, 285 F.3d at 697. The verdict is upheld if any interpretation of evidence could lead a reasonable jury to find a defendant guilty beyond a reasonable doubt. *See United States v. Armstrong*, 253 F.3d 335, 336 (8th Cir. 2001).

To prove conspiracy, the Government must show an agreement to achieve an illegal purpose, the defendant's knowledge of the agreement, and the defendant's knowing participation in the conspiracy. *Cruz*, 285 F.3d at 700; *United States v. Oleson*, 310 F.3d 1085, 1089 (8th Cir. 2002); *United States v. Crouch***,** 46 F.3d 871, 874 (8th Cir. 1995). Direct or circumstantial evidence may provide the basis for a conspiracy conviction. *Oleson*, 310 F.3d at 1089; *United States v. McCracken***,** 110 F.3d 535, 540 (8th Cir. 1997). Evidence of a conspiracy will "often be circumstantial" due to a conspiracy's "necessary aspect of secrecy." *Oleson*, 310 F.3d at 1089, *quoting United States v. Robinson*, 217 F.3d 560, 564 (8th Cir. 2000). Evidence may be implied by "surrounding circumstances or by inferences from the actions of the parties." *United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003).

To sustain a conviction of aiding and abetting with intent to distribute, the government must prove: "(1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed." *United States v. Rojas*, 356 F.3d 876, 878 (8th Cir. 2004), *quoting United States v. McCracken*, 110 F.3d 535, 540 (8th Cir. 1997).

-3-

Castro, Martinez, and Rodela argue that there was insufficient evidence to support their drug convictions. Each contends he was merely present when an illegal activity occurred and that the government cannot show knowledge of a conspiracy, knowingly joining a conspiracy, or acting to aid possession with intent to distribute. Castro, Martinez, and Rodela reason that although the evidence shows their association or presence when an illegal activity takes place, these facts are not enough. Association with a known drug dealer and presence at the location of a crime are not sufficient to prove a conspiracy charge. *See Cruz*, 285 F.3d at 701.

Here, however, the evidence establishes more than association and mere presence. On February 27, 2005, Martinez, Castro, and a girlfriend left San Diego for Kansas City. They drove a Mitsubishi with a temporary Missouri license tag. The tag had been mailed to Castro in San Diego, in an envelope bearing Rodela's name and the return address of a previous residence. Castro signed for the tag and later told his girlfriend it was for "a friend." Before leaving San Diego, Castro's girlfriend said she found a large quantity of meth and later saw Martinez with it "all spread out on the dresser."

The destination of the three San Diegans was an address in Kansas City on Fremont street. A resident at that address was already the subject of a drug trafficking investigation by local police. On February 26, police obtained a search warrant based on information from a reliable confidential informant that she had seen drugs at the Fremont address, and that a shipment of meth would arrive there soon.

Then, on March 1 the confidential informant told police that an occupant of the Fremont address, known as "Shentin," had said his "material" would arrive that day. The three San Diegans arrived early on that day. Later in the evening, the informant heard several men speaking in the basement, from which Shentin brought up half a pound of meth. According to the informant, it appeared Shentin had recently received the shipment he was expecting. Police set up surveillance at 8:15 p.m., after the informant alerted police she had left the residence. Around 9:00 p.m., an officer

observed four individuals leave the house in two separate vehicles – the Mitsubishi, and a black Nissan. Castro and Martinez were in separate cars, each sharing a ride with an occupant of the Fremont address. Police followed the vehicles, eventually stopping and detaining the occupants, including Castro and Martinez, pending execution of the search warrant at the Fremont address. When questioned, Castro lied to police, saying he was coming from his hotel, rather than the Fremont address. During the search of the house, officers found various drug paraphernalia, over 307 grams of meth in a PVC pipe under Rodela's bed in the basement, and another 334 grams of meth in a closet near Rodela's bed. It is undisputed that Rodela lived in the basement bedroom. After his arrest, Castro denied knowing the names of the other three men and said the Mitsubishi belonged to a friend, whose name he did not know.

Castro, Martinez, and Rodela claim that no direct evidence connects them to the meth found in the Fremont residence. True, knowledge of illegal drugs is required to prove at least two of the elements of a conspiracy. *United States v. Mendoza-Larios*, 416 F.3d 872, 876 (8th Cir. 2005). Direct evidence is not, however, required. Circumstantial evidence is sufficient. *Oleson*, 310 F.3d at 1089. Viewing the evidence (outlined above) most favorably to the verdict, a reasonable jury could convict Castro, Martinez, and Rodela on the conspiracy charges. A reasonable jury could also find them guilty on the aiding and abetting charges, especially since the government was not required to prove that Castro, Martinez, or Rodela possessed or sold the drugs in order to impose liability. *See United States v. Mendoza*, 421 F.3d 663, 669 (8th Cir. 2005).

Castro and Martinez also argue that the evidence is insufficient for convictions of interstate travel in aid of a racketeering enterprise. To prove this, the government must show that they traveled in interstate commerce with the intent to distribute the proceeds of an unlawful activity, or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity. *See* **18 U.S.C. §1952**.

Sufficient evidence supports the racketeering convictions. Castro, Martinez, and the girlfriend traveled from San Diego to Kansas City. The girlfriend testified to seeing a large quantity of drugs in their home in San Diego. According to her, Castro became upset after learning she took some meth, because "it had to be a certain amount." Further, Castro and Martinez were in the group leaving the Fremont address after an informant told police a shipment of meth had just arrived. The informant had previously told police that the shipment was expected, and that she saw drugs in the house that day. There was sufficient evidence for a reasonable jury, drawing all reasonable inferences, to find Castro and Martinez guilty of the racketeering charge.

II.

Castro next seeks reversal of his convictions, including illegal reentry after deportation, arguing that the stop, detention, and warrantless arrest were not supported by probable cause and violate the Fourth Amendment. This court reviews de novo the denial of a motion to suppress and the underlying factual determinations for clear error. *United States v. Barker*, 437 F.3d 787, 789 (8th Cir. 2006). The district court's ruling will be upheld if "any reasonable view of the evidence supports" it. *Id.*, *quoting United States v. Bloomfield*, 40 F.3d 910, 913 (8th Cir. 1994).

Castro says he was merely present at the scene and that the evidence available to the officers did not provide probable cause for his arrest. "Mere presence at the scene of a crime is not probable cause for a warrantless arrest." *United States v. Luschen*, 614 F.2d 1164, 1171 (8th Cir. 1980). However, officers can stop and detain a suspect without a warrant, if the officer has reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion is based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Barker*, 437 F.3d at 790. The totality of the circumstances are viewed in light of the officer's experience and familiarity with drug trafficking. *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005). Even a

combination of innocent conduct can provide reasonable suspicion of criminal activity. *Id.* at 878.

Here the officers relied on information from a long-time confidential informant. The district court found that on March 1, the informant told police that Shentin's shipment of meth was arriving that day; that while she was waiting for drugs in the house, Shentin was in the basement with two or three other men; and that Shentin came from the basement with the drugs. Based on police surveillance of the house, no one entered or left for an hour until four individuals – including Shentin, Castro, and Martinez – left in two separate vehicles. By the totality of the circumstances, the officers had reasonable suspicion to believe that criminal activity was afoot to justify the investigatory stop.

Castro argues that after the stop, the officers had no basis, besides mere presence, for probable cause to make a warrantless arrest. Probable cause is also determined by the totality of the circumstances – giving weight to the inferences police officers draw from their experiences. *United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994). This court focuses on the moment the arrest was made, considering whether "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *United States v. Taylor*, 106 F.3d 801, 803 (8th Cir. 1997), *quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964); *See also Sherrill* 27 F.3d at 347.

Castro was not arrested merely due to his presence. *See United States v. Taylor*, 106 F.3d 801 (8th Cir. 1997). In addition to evidence known by officers before the stop, information gained while Castro was detained provided probable cause for the warrantless arrest. After being stopped, Castro gave officers valid California identification, but the car he was driving had a Missouri temporary license tag. When questioned where he had just come from, Castro responded that he had

come from California. Questioned again, he said he had just come from the hotel. By surveillance, officers knew that Castro had come from the house, not the hotel. Officers also knew that no one had entered or left the house since the informant told them the meth had arrived. Further, before Castro's arrest, officers completed the search, radioing to the detaining officers that meth was found in the basement where the informant had said she had heard men speaking. By the totality of the circumstances, a reasonable view of the evidence supports the district court's determination of probable cause.

## III.

The judgment of the district court is affirmed.

_____