# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-1633

———————

United States of America,       *
                                     *

          Appellee,     *

                             *   Appeal from the United States
     v.                    *   District Court for the
                             *   Eastern District of Missouri.

Jesse E. Turnbull, also known as    *
Jesse E. Turnbough,            *
                             *

          Appellant.    *

———————

Submitted:  September 8, 2003

Filed:   November 14, 2003

———————

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

———————

BYE, Circuit Judge.

A jury found Jesse Turnbull violated 18 U.S.C. § 922(g)(3) as an unlawful user of controlled substances in possession of a firearm. Turnbull appeals arguing the evidence was insufficient to prove he was an "unlawful user." Turnbull also argues the district court[1] abused its discretion in instructing the jury on the definition of an

———————

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

"unlawful user" and in admitting photographs showing Turnbull involved in drug activities. We affirm.

I

Just past midnight on May 17, 2001, Franklin County (Missouri) Deputy Sheriff Charles Subke was traveling south on Highway Hh in rural Catawissa, Missouri, and smelled an odor commonly associated with the manufacture of methamphetamine. Deputy Subke called for other officers to help find the smell's source, which ultimately proved to be a mobile methamphetamine lab (including plastic funnels, muriatic acid, latex gloves, lithium batteries, and compressed gas cylinders containing anhydrous ammonia) located on the backyard patio of Turnbull's residence. Officers arrested an individual named David Creamer as he tried to flee the site. When officers entered the home in an attempt to locate another person seen fleeing, they found Turnbull asleep on a couch in the basement. Turnbull lived alone in the home, in the basement. When questioned, Turnbull admitted he used meth but denied knowledge of the backyard lab.

After obtaining a search warrant, officers found a coffee cup in the basement containing Turnbull's driver's license and a white powder residue which tested positive for methamphetamine; aluminum foil and blotter paper in the basement refrigerator which tested positive for LSD; drug paraphernalia in the garage, including baggies containing off-white powder residue, lighters, spoons, a scale, snorting straws and aluminum foil; several photographs showing Turnbull and others engaged in drug activities; a baggie of off-white powder in Turnbull's vehicle which tested positive for methamphetamine; and twenty-three firearms in a locked gun safe in the basement.

Turnbull was indicted on one count of conspiring to manufacture 50 grams or more of a mixture or substance containing methamphetamine in violation of 21

U.S.C. § 841(a)(1), and one count of being an unlawful user of controlled substances in possession of firearms in violation of 18 U.S.C. § 922(g)(3). During a three-day jury trial, the government presented the evidence found in the search, as well as testimonial evidence from Creamer, who pleaded guilty and testified against Turnbull. He told the jury Turnbull let him cook methamphetamine several times at Turnbull's residence in exchange for some of the finished product and he had Turnbull's permission to cook methamphetamine on the night of May 17. Creamer also told the jury he used methamphetamine with Turnbull at least eight times.

Turnbull testified in his own defense. He admitted using methamphetamine for a year prior to May 17, but only rarely. Turnbull said the last time he got methamphetamine from Creamer was a week before May 17. He admitted getting high off that meth a "couple" times. He further admitted the methamphetamine found in a secret compartment in his vehicle was his. He denied giving Creamer permission to cook methamphetamine at his house and denied any knowledge about the LSD found in his refrigerator. He claimed the photographs depicting him and others engaged in drug activity were thirteen years old and the substance in the photographs was baking soda. The government did not test Turnbull to determine if he had drugs in his system on the night of May 17.

Turnbull requested an instruction which advised the jury "an unlawful user of a controlled substance is one who uses narcotics so frequently and in such quantities as to lose the power of self control and thereby pose a danger to the public morals, health, safety or welfare." The district court declined to give that instruction and defined "unlawful user" by tracking the definition used by the Treasury Department in its firearm regulations:

> A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other

than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, . . . .

27 C.F.R. § 478.11.

The jury could not reach a verdict on the count charging Turnbull with conspiring to manufacture methamphetamine, and the district court declared a mistrial on that count. The jury convicted Turnbull on the count charging him with possessing firearms while being an unlawful user of controlled substances. After the district court sentenced Turnbull to 51 months imprisonment, followed by three years of supervised release, Turnbull filed this appeal.

II

Turnbull contends the evidence was insufficient to prove he was an unlawful user of controlled substances. Reviewing this claim de novo, United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002), and viewing the evidence in the light most favorable to the verdict and accepting all reasonable inferences as established, United States v. Kamerud, 326 F.3d 1008, 1012 (8th Cir. 2003), we disagree.

Section 922(g)(3) prohibits "an unlawful user of . . . any controlled substance" from possessing a firearm. The term "unlawful user" is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and

-4-

regular drug use. E.g., United States v. Jackson, 280 F.3d 403, 406 (4th Cir. 2002) (upholding a district court's determination that the government must establish "a pattern of use and recency of use" as a reasonable application of the statute); United States v. Purdy, 264 F.3d 809, 812 (9th Cir. 2001) (rejecting a void-for-vagueness challenge to § 922(g)(3) where defendant's "drug use was sufficiently consistent, 'prolonged,' and close in time to his gun possession to put him on notice that he qualified as an unlawful user of drugs") (citation omitted).

Although Turnbull contends the evidence was insufficient to show a temporal nexus between his drug use and his possession of guns, by his own admission he had been using methamphetamine for an extended period of time (one year), and had become high a couple times within the week of when firearms were found in his home. The evidence also indicated Turnbull had used methamphetamine with Creamer at least eight times, had a secret stash of methamphetamine in his vehicle, had LSD in his refrigerator, his driver's license was found in a coffee cup containing meth residue (suggesting very recent use), and his home contained numerous drug paraphernalia and photographs depicting him and others in drug-related activities. From this evidence the jury could clearly infer a sufficient temporal nexus between regular drug use and Turnbull's possession of firearms. See United States v. Mack, 343 F.3d 929, 933-35 (8th Cir. 2003) (holding evidence of unlawful use sufficient where defendant possessed user quantity of marijuana at the time of his arrest and arresting officers smelled marijuana, and where one month earlier defendant had confronted witness about theft of his marijuana and fired a gun into the air); United States v. Oleson, 310 F.3d 1085, 1090 (8th Cir. 2002) (holding evidence of unlawful use sufficient where user quantity of amphetamine was found on table in defendant's residence (where he lived alone) and testimony established defendant frequently used drugs with his customers); United States v. McIntosh, 23 F.3d 1454, 1459 (8th Cir. 1994) (holding evidence of unlawful use sufficient where police found marijuana and drug paraphernalia in defendant's apartment; defendant admitted using "crank," or methamphetamine; and defendant admitted being addicted to drugs and alcohol).

Turnbull also contends the district court should have defined "unlawful user" as someone "who uses narcotics so frequently and in such quantities as to lose the power of self control," citing United States v. Herrera, 289 F.3d 311 (5th Cir. 2002). Reviewing this issue for an abuse of discretion, see United States v. Stuckey, 220 F.3d 976, 979 (8th Cir. 2000), we find none.

First, we note Herrera was vacated by the Fifth Circuit sitting en banc, and the § 922(g)(3) conviction at issue in that case was ultimately affirmed. United States v. Herrera, 313 F.3d 882, 885 (5th Cir. 2002) (en banc). En banc, the Fifth Circuit suggested a less restrictive standard than cited in the original panel decision. See id. (indicating the evidence was sufficient to show regular drug use over an extended period of time). Second, the Treasury Department's definition seems entirely consistent with any standard for unlawful use to be gleaned from our prior decisions. The district court has wide discretion in instructing the jury, and clearly acted within its discretion when incorporating the Treasury Department's definition of unlawful user.

Finally, Turnbull claims the district court should not have admitted evidence of the photographs showing him engaged in drug activity. We review the district court's decision to admit evidence for an abuse of discretion, United States v. Vesey, 330 F.3d 1070, 1073 (8th Cir. 2003), and find none. The government had the burden of proving Turnbull's unlawful drug use, and the photographs were clearly relevant to that issue under Fed. R. Evid. 402. Neither the district court in admitting the photographs, nor the jury in considering them, was required to accept Turnbull's claim the photographs were thirteen years old or the substance shown in them was baking soda.

## III

We affirm the judgment of conviction.

_____