# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3170
_____

United States of America

*Plaintiff - Appellee*

v.

Keith L. Carnes

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 24, 2021
Filed: January 3, 2022
_____

Before SHEPHERD, WOLLMAN, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury found Keith L. Carnes guilty on all counts of a 3-count indictment, and the district court sentenced him to 240 months imprisonment and 3 years supervised release. Carnes appeals his convictions and sentence. Having jurisdiction under 28 U.S.C. § 1291, we vacate Carnes's third concurrent term of supervised release, affirm the district court in all other respects, and remand for the district court to enter a corrected written judgment.

I.

This case arises out of Carnes's possession of a gun one day in 2013 and during a two-week period in 2016. "We recite the facts in the light most favorable to the jury's verdict." United States v. Galloway, 917 F.3d 631, 632 (8th Cir. 2019) (citation omitted).

On February 10, 2013, a law enforcement officer stopped a vehicle driven by Carnes, who was the sole occupant, for driving 57 miles per hour in a 35-mile-per-hour zone near the intersection of East 63rd Street and Lewis Road in Kansas City, Missouri. Upon approaching the driver's side door, the officer smelled the odor of marijuana. The officer told Carnes, "I need your driver's license and your sack of weed." Carnes responded, "I just smoked at the house" and said that he "just got done smoking." Carnes also told the officer, "I got my gun, too." The officer asked Carnes to exit the vehicle and subsequently recovered a handgun from Carnes's waistband during a pat-down search. A backup officer also smelled a strong odor of marijuana coming from within the vehicle, Carnes's clothing, and his breath. Carnes told this officer that he had smoked a "blunt," which he also called "Kush." Carnes was arrested and transported to the patrol station, where he failed a field sobriety test. Officers at the station noted that Carnes's breath had a strong odor of marijuana, his eyes were bloodshot, and he was walking hesitantly. Carnes stated that he was not "that high." At trial, Carnes admitted that he was under the influence of marijuana when stopped by law enforcement. Carnes testified that he refused to take a blood test or provide a urine sample because he knew the results would come back positive for marijuana.

Three-and-a-half years later, on August 16, 2016, a man was sitting in his parked vehicle near the intersection of East 35th Street and Wabash Avenue in Kansas City, Missouri. As the man's ex-girlfriend was exiting the man's vehicle, another vehicle pulled up alongside the left-hand side of the man's vehicle. The driver of the other vehicle said to the man's ex-girlfriend, "What's up, baby," and the man said to the driver, "Do you mind, I'm talking to my ex." The driver then

pulled out a gun and fired at the man four times before driving away. The man selected Carnes as the shooter from a photo array and also testified that his ex-girlfriend had identified Carnes as the shooter. A witness who identified himself as the front-seat passenger of the shooter's vehicle provided law enforcement with a phone number to contact the shooter. Law enforcement determined that Carnes was associated with the phone number. At trial, Carnes denied the shooting.

On August 30, 2016, two weeks after the shooting, Carnes was approaching a female friend's house in Kansas City, Missouri when he saw her son. They spoke briefly before exchanging gunfire; Carnes sustained multiple gunshot wounds. Despite his injuries, Carnes ran to his girlfriend's vehicle and drove away alone. While speeding and driving in the wrong lane, Carnes ran a red light and caused a three-car collision that killed a motorist. A law enforcement officer responding to the collision approached Carnes's vehicle, and Carnes identified himself. The officer smelled the odor of marijuana in his vehicle and observed a handgun on the floorboard between Carnes's feet and a plastic baggie containing what testing later revealed to be an ounce of marijuana. A shell casing from inside the handgun matched shell casings found at the scene of the August 16 shooting. Carnes tested positive for marijuana, cocaine, and phencyclidine (PCP). At trial, Carnes admitted to smoking marijuana and driving under the influence of marijuana on the day of the collision, though he claimed the marijuana found in the vehicle did not belong to him. Carnes also testified that he used marijuana frequently and that law enforcement had previously taken marijuana from him.

A grand jury returned a three-count indictment, charging Carnes with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count 1) and two counts of being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2) (Counts 2 and 3). Counts 1 and 2 concerned Carnes's possession of a gun on August 30, 2016. Count 3 concerned his possession of a gun on February 10, 2013. In 2019, a superseding indictment expanded the date range in Counts 1 and 2 to cover August 16 through August 30.

Before trial, Carnes stipulated that, prior to August 16, 2016, he had been convicted of a felony offense punishable by a term of imprisonment exceeding one year and he knew that he had been convicted of such an offense. After the government presented its evidence, Carnes moved for a judgment of acquittal, arguing that the government failed to prove the elements of each count. The district court denied his motion. Carnes renewed his motion for a judgment of acquittal after both parties rested their cases, which the district court again denied. At the conclusion of the jury trial, Carnes was convicted on all three counts.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR found a total offense level of 24 and a criminal history category of IV. It calculated Carnes's United States Sentencing Guidelines range as 77 to 96 months imprisonment, with a statutory maximum of 240 months. The government requested an upward variance to 240 months, citing the nature and circumstances of Carnes's offense, his criminal history, and his post-conviction assault of a corrections officer. At sentencing, the district court merged Counts 1 and 2 for purposes of sentencing and sentenced Carnes to 120 months imprisonment on Counts 1 and 2 as well as 120 months on Count 3, to run consecutively. This resulted in a total term of 240 months imprisonment. The district court also imposed three concurrent three-year terms of supervised release. Carnes appeals his conviction and sentence on multiple grounds.

II.

Carnes first argues that the government failed to present sufficient evidence that he was an "unlawful user of a controlled substance," as required for Counts 2 and 3. "We review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence." United States v. Fang, 844 F.3d 775, 778 (8th Cir. 2016) (citation omitted). "We review the sufficiency of the evidence de novo, considering the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict." United States v. White, 962 F.3d 1052, 1056 (8th Cir. 2020).

Counts 2 and 3 charged Carnes with being an unlawful user of a controlled substance in possession of a firearm, in violation of §§ 922(g)(3) and 924(a)(2). "It is illegal for 'an unlawful user of . . . any controlled substance' to possess a firearm." United States v. Rodriguez, 711 F.3d 928, 937 (8th Cir. 2013) (alteration in original) (quoting § 922(g)(3)). "The government is not required to prove that the defendant possessed the firearm while contemporaneously using a controlled substance." Id. Instead, "[i]t is sufficient for the government to demonstrate use of a controlled substance 'during the period of time' that the defendant possessed firearms, not that there was actual use 'at the time that the officers discovered [the defendant] in possession of firearms.'" Id. (second alteration in original) (citation omitted).

In United States v. Turnbull, we recognized that "[t]he term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." 349 F.3d 558, 561 (8th Cir. 2003), vacated, 543 U.S. 1099 (2005), reinstated, 414 F.3d 942 (8th Cir. 2005) (per curiam). In subsequent decisions, we interpreted § 922's "unlawful user" element to require a temporal nexus between the proscribed act (for § 922(g)(3), possession of a firearm) and regular drug use. E.g., United States v. Figueroa-Serrano, 971 F.3d 806, 812 (8th Cir. 2020); United States v. Turner, 842 F.3d 602, 605 (8th Cir. 2016); United States v. Boslau, 632 F.3d 422, 430 (8th Cir. 2011).

Without defining "regular drug use" ourselves, we have "held that a district court acted within its discretion" when giving a jury instruction that "adequately captured the 'temporal nexus [between the proscribed act] and regular drug use' required by the term [unlawful user]." Boslau, 632 F.3d at 430 (first alteration in original) (citation omitted). In Boslau, the district court instructed the jury: "Such use [of a controlled substance] is *not limited to the use of drugs on a particular day*, or within a matter of days or weeks before, but rather that the unlawful use has *occurred recently enough to indicate* that the individual is *actively engaged in such conduct*." Id. at 429 (emphasis added); see also Turnbull, 349 F.3d at 561 (finding a district court did not abuse its discretion by giving an almost-identical jury

-5-

instruction). "'[A]ctively engaging' sufficiently encompasses the requisite temporal nexus" required by § 922's "unlawful user" element. See Boslau, 632 F.3d at 430. Here, the district court similarly instructed the jury regarding the phrase "unlawful user of a controlled substance":

> The defendant must have been *actively engaged in use of a controlled substance during the time he possessed the firearm*, but the law does not require that he use the controlled substance at the precise time he possessed the firearm. Such use is *not limited to the use of drugs on a particular day* or within a matter of days or weeks before but, rather, that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.

R. Doc. 144, at 101 (emphasis added).

Carnes cites case law from our sister circuits that requires proof of regular use over an extended period. E.g., United States v. Tanco-Baez, 942 F.3d 7, 15 (1st Cir. 2019); United States v. Bowens, 938 F.3d 790, 793 (6th Cir. 2019). Carnes acknowledges that the government offered evidence that he used controlled substances on the days he was found in possession of a firearm. Nevertheless, Carnes argues that the government failed to meet its burden of proof that Carnes had regularly used controlled substances over an extended period leading up to the 2013 and 2016 incidents.

We reject Carnes's expansive interpretation of "regular drug use" that would require evidence of use over an extended period. While some of our sister circuits require proof that a defendant used controlled substances regularly over an extended period, e.g., Tanco-Baez, 942 F.3d at 15; Bowens, 938 F.3d at 793; United States v. Purdy, 264 F.3d 809, 812-13 (9th Cir. 2001), when the defendant in Boslau urged a similar approach, we declined to adopt such a rigorous definition, 632 F.3d at 429-31.

Viewing the evidence in the light most favorable to the verdict and accepting all reasonable inferences that support the verdict, the government presented sufficient evidence that Carnes was actively engaged in the use of a controlled substance during the time he possessed firearms in 2013 and 2016, thereby satisfying the requisite temporal nexus between gun possession and regular drug use required under § 922(g)(3). At trial, Carnes admitted that he used marijuana frequently and that law enforcement had previously taken marijuana from him. In 2013, law enforcement smelled the odor of marijuana on Carnes, and Carnes repeatedly admitted that he had smoked marijuana, including the statements that he had "just smoked at the house" and had "just got done smoking." At trial, Carnes testified that he was under the influence of marijuana when law enforcement stopped him and that he refused to take a blood test or provide a urine sample because he knew either would test positive for marijuana. In 2016, law enforcement smelled the odor of marijuana inside a vehicle driven by Carnes and observed a baggie containing marijuana by his feet. Carnes tested positive for marijuana, cocaine, and PCP. At trial, Carnes testified that he was operating the vehicle under the influence of marijuana.

Carnes also argues that the government failed to prove that he knew he was an unlawful user at the time of each offense. We conclude that the government presented sufficient evidence that Carnes knew his use of controlled substances (notably, marijuana) was unlawful. In a § 922(g) prosecution, the government must prove "that [the defendant] knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). In 2013, Carnes refused to take a blood test or provide a urine sample because he knew either would test positive for marijuana, showing his knowledge of the unlawfulness of its use. At trial after the 2016 incident, Carnes testified that law enforcement would often not arrest him but would take his marijuana, pour it out, and stomp on it. Based on this evidence, a reasonable juror could find that Carnes knew he was using marijuana unlawfully. The district court thus did not err in denying Carnes's motion for judgment of acquittal based on the sufficiency of the evidence.

Carnes next argues that Counts 1 and 2 are multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment and that the district court erred by imposing separate sentences for the two counts that were based on a single incident. Because Carnes did not raise this claim before the district court, we review for plain error. United States v. Woolsey, 759 F.3d 905, 907 (8th Cir. 2014). For Carnes to prevail, he "must show that the district court committed an error that is plain, *i.e.* clear under current law, that he was prejudiced by the error, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation omitted). The parties agree that the district court committed plain error because its written judgment regarding Counts 1 and 2 is broader than its oral pronouncement delivered at sentencing.

The parties agree that at sentencing, the district court correctly merged Counts 1 and 2 for purposes of sentencing, because they were based on a single incident. See United States v. Richardson, 439 F.3d 421, 422 (8th Cir. 2006) (en banc) (per curiam) (holding that multiple counts of conviction under § 922(g) arising out of a single act of possession of a firearm should be merged at sentencing into a single offense). The district court orally sentenced Carnes to one 120-month sentence for the merged Counts 1 and 2. However, the written judgment committed Carnes to two concurrent 120-month sentences for Counts 1 and 2.[1] Also, at sentencing and in its written judgment, the district court committed Carnes to three concurrent three-year terms of supervised release.

"The oral pronouncement by the sentencing court is the judgment of the court." United States v. Mays, 993 F.3d 607, 622 (8th Cir. 2021) (citation omitted). "Where an oral sentence and the written judgment conflict, the oral sentence controls." United States v. Foster, 514 F.3d 821, 825 (8th Cir. 2008) (citation

---

[1]Both the district court's oral pronouncement and written judgment properly sentenced Carnes to a separate 120-month sentence for Count 3, to be served consecutively.

omitted).  "[T]he portion of the written judgment 'that is broader than the oral version is void.'"  Mays, 993 F.3d at 622 (citation omitted).  When such a conflict exists, the appropriate remedy is to remand "to the district court with instructions for it to reconcile the written judgment with the oral pronouncement."  Id.  Accordingly, we will remand for the district court to amend its written judgment to conform to its oral pronouncement of one 120-month sentence for Counts 1 and 2.

Additionally, as the government concedes, the district court plainly erred when it imposed three terms of supervised release.  After properly merging Counts 1 and 2, the district court was limited to imposing one term of supervised release for these counts, in addition to the single term of supervised release imposed for Count 3, for a total of two terms of supervised release.  See 18 U.S.C. §§ 3583(a), 3624(e).  Accordingly, we will vacate the district court's imposition of a third term of supervised release.

IV.

Carnes finally contends that the district court imposed a substantively unreasonable sentence.  We review the substantive reasonableness of a sentence for abuse of discretion.  United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).  A district court abuses its discretion when, in weighing the factors set forth in 18 U.S.C. § 3553(a), "it (1) 'fails to consider a relevant factor that should have received significant weight'; (2) 'gives significant weight to an improper or irrelevant factor'; or (3) 'considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'"  Id. (citation omitted).

Carnes argues that the district court failed to consider mitigating factors that should have received significant weight and committed a clear error of judgment in weighing relevant factors that led the district court to impose a significant upward variance.  Carnes claims that the district court gave no consideration to his gunshot wounds that caused the August 30 collision, his remorse over the fatality resulting from the collision, and his separate state charge for involuntary manslaughter.

Carnes also contends that the district court failed to consider his mental health issues that contributed to his post-conviction assault of a corrections officer. Finally, Carnes argues that, while a district court may consider factors already considered in calculating a defendant's Guidelines range, the heavy weight assigned to Carnes's criminal history led to a substantial upward variance that undermined sentencing uniformity.

Having examined the record, we conclude that the district court did not abuse its discretion by varying upward from the Guidelines range and did not impose a substantively unreasonable sentence, as the court properly considered the factors listed in § 3553(a). "A district court has 'wide latitude' to assign weight to give[n] factors, and '[t]he district court may give some factors less weight than a defendant prefers or more weight to other factors, but that alone does not justify reversal.'" United States v. Brown, 992 F.3d 665, 673-74 (8th Cir. 2021) (second alteration in original) (citation omitted). In crafting Carnes's sentence, the district court considered the § 3553(a) factors, stressing the nature and circumstances of Carnes's offense, including the August 30 fatality, his violent criminal history, and the need to deter Carnes and protect the public. The district court was entitled to give great weight to these factors. See id. Carnes's assertion of substantive unreasonableness amounts to nothing more than a disagreement with how the district court chose to weigh the § 3553(a) factors. See United States v. Campbell, 986 F.3d 782, 800 (8th Cir. 2021).

Regarding Carnes's claim that the district court failed to consider mitigating factors that were presented during the sentencing hearing and appeared in the PSR, "[t]he [district] court did not abuse its discretion merely by not discussing all of a defendant's arguments." United States v. Delgado-Hernandez, 646 F.3d 562, 568 (8th Cir. 2011) (per curiam). We presume the district court properly considered issues argued by the parties at the sentencing hearing even though the district court itself did not discuss the issues. See United States v. Miles, 499 F.3d 906, 909-10 (8th Cir. 2007). The district court also had the PSR at its disposal, and it is evident from the record that the district court examined the PSR. Regarding the factors that

influenced the district court to vary upward, as Carnes acknowledges, "factors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance." <u>United States v. Thorne</u>, 896 F.3d 861, 865 (8th Cir. 2018) (per curiam) (citation omitted). Carnes's sentence is thus not substantively unreasonable.

V.

For the foregoing reasons, we vacate Carnes's third term of supervised release, remand for the district court to amend its written judgment to conform to its oral pronouncement regarding the merged Counts 1 and 2, and affirm the judgment of the district court in all other respects.

_____