# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2441
_____

United States of America

*Plaintiff - Appellee*

v.

Alexander Wesley Ledvina

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: September 19, 2025
Filed: February 6, 2026
_____

Before COLLOTON, Chief Judge, ERICKSON and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Alexander Wesley Ledvina appeals the district court's decision denying his motion to dismiss charges for being an unlawful drug user in possession of a firearm and for making a false statement during the purchase of a firearm. In light of this Court's decisions in United States v. Perez, 145 F.4th 800 (8th Cir. 2025), and United States v. Cooper, 127 F.4th 1092 (8th Cir. 2025), we vacate his conviction under 18 U.S.C. § 922(g)(3) and remand for further proceedings to resolve Ledvina's Second

Amendment as-applied challenge. We affirm the district court's decision on all other issues.

## I. BACKGROUND

A grand jury indicted Ledvina in a two-count indictment. Count One charged him with unlawful possession of a firearm by a drug user, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(8). Count Two charged him with making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 924(a)(1)(A). The indictment alleged that on August 11, 2022, Ledvina, an unlawful user of marijuana and cocaine, knowingly possessed five firearms in and affecting commerce, and that on July 29, 2022, he knowingly made false statements and representations—specifically, that he was not an unlawful user of a controlled substance—in connection with his acquisition of an Arsenal Bulgarian P-MO1, 9x18 mm caliber pistol.

The district court rejected Ledvina's claim that, as used in § 922(g)(3), the terms "user" and "addict" are unconstitutionally vague. The court held in abeyance Ledvina's claim that § 924(a)(1)(A) was void on its face, finding Ledvina's facial challenge was an as-applied challenge in disguise. As to Ledvina's post-Bruen[1] facial challenge to § 922(g)(3), the district court concluded that the statute is a constitutional restriction consistent with historical traditions. Finally, the court reserved ruling on any as-applied challenge to § 922(g)(3) until completion of the presentation of evidence at trial.

The case proceeded to a bench trial on stipulated facts, a joint exhibit, and an exhibit offered by the government. The evidence included Ledvina's stipulation that he purchased at least 14 firearms between April 2018 and February 2022. As of August 11, 2022, Ledvina was in possession of at least five firearms. Ledvina specifically admitted that on July 29, 2022, he purchased a pistol from a federally

---

[1]New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022).

licensed firearms dealer in Marion, Iowa. At the time of the purchase, an employee of the licensed firearms dealer smelled the odor of marijuana emanating from Ledvina, a fact the employee reported to the authorities. Ledvina admitted that he smelled like marijuana because he had smoked marijuana in July 2022. In connection with the firearm purchase, Ledvina stated on ATF Form 4473 that he was not an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance. At the time Ledvina made this representation, he knew that he had used controlled substances in March, April, May, June, and July 2022. In further detail, Ledvina stipulated that between March and July 2022, he used marijuana at least five to six times per week and continued to consistently use marijuana the following month in August 2022. Ledvina acknowledged that at no point during the timeframe at issue had he been prescribed marijuana, THC, or cocaine by a licensed physician.

The evidence also showed that on August 11, 2022, while a search warrant was being executed at Ledvina's residence, he pulled into his driveway in his vehicle. Investigators approached Ledvina and instructed him to show his hands. Ledvina continued to look and reach toward the floorboard of the driver's seat. Ledvina eventually opened the car door and began to get out. As he got out, the vehicle began rolling backwards. An investigator jumped in to put the vehicle in park. During the vehicle search, investigators located a loaded pistol on the driver's side floorboard, a partially smoked marijuana roach in the storage area by the shifter, and a plastic bag containing marijuana in the center console. Investigators also obtained a urine sample from Ledvina, which confirmed the presence of Benzoylecgonine (a metabolite of cocaine), Ecgonine methyl ester (a metabolite of cocaine), and 11-nor-9-carboxy-delta-9-tetrahydrocannabinol (a metabolite of THC). Ledvina admitted that he used marijuana sometime between July 21, 2022, and August 11, 2022, and that he used cocaine sometime between August 8, 2022, and August 11, 2022.

After admission of the evidence, Ledvina moved for a judgment of acquittal, arguing the government failed to prove he was an "unlawful user" or "addict." The

district court found the evidence established beyond a reasonable doubt that Ledvina was guilty on both counts. Regarding the possession count, the court found the evidence established both the temporal requirement and the knowledge component to satisfy the element of being an "unlawful user" of a controlled substance, and that Ledvina knew he belonged to a category of persons barred from possessing a firearm. The district court further found the evidence established beyond a reasonable doubt that Ledvina's representation that he was not an unlawful user of a controlled substance on ATF Form 4473 was false and Ledvina knew his representation was false when he made it to the licensed firearms dealer, explaining: "Even had defendant lacked a scintilla of knowledge that using marijuana was unlawful prior to filling out that form, a plain reading of that question and warning would have put him on notice that his use was unlawful, meaning he was an unlawful user, and given him the knowledge that saying 'no' was false." The form asked the applicant to mark "Yes" or "No" to the following question, which was accompanied by a warning:

e.    Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?
       **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside.

As to the phrase "unlawful user of, or addicted to," as framed in the question, the district court provided several reasons why a reasonable person would not construe "unlawful user" and "addicted to" as synonyms. First, the court noted people commonly understand "or" to be disjunctive. Second, the court explained that the Code of Federal Regulations defines "unlawful user" and "addicted to" separately. Third, one applying a common sense reading of the terms would understand that a person can be an unlawful user of drugs without being addicted to a drug. And fourth, the district court found the commas, even if ungrammatical, show an attempt to separate "addicted to" from "unlawful user."

-4-

The district court rejected Ledvina's as-applied void for vagueness challenges to the statutes, finding Ledvina stipulated to facts establishing that during the relevant time period, he possessed firearms while he was an "unlawful user" of marijuana and cocaine. The court found that Ledvina's admitted use of controlled substances and coded language in text messages showed that he knew he was using controlled substances in a way that was unlawful and thus made him an "unlawful user." The court also pointed out that ATF Form 4473 informed Ledvina that this was the case and thus Ledvina had sufficient notice that his conduct was proscribed by § 924(a)(1)(A). The court sentenced Ledvina to concurrent imprisonment terms of 51 months.

Ledvina appeals both convictions, raising facial and as-applied void for vagueness challenges and arguments that § 922(g)(3) violates the Second Amendment.

## II.  DISCUSSION

We review the denial of a motion to dismiss a charge *de novo*. United States v. Turner, 842 F.3d 602, 604 (8th Cir. 2016).

### 1.  Fifth Amendment

A criminal statute is unconstitutionally vague and violates the Fifth Amendment due process clause if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015). Section 922(g)(3) prohibits firearm possession by any person "who is an unlawful user of or addicted to any controlled substance." 18 U.S.C. § 922(g)(3). A defendant who "was actively engaged in the use of a controlled substance during the time he possessed firearms" violates the statute. Perez, 145 F.4th at 804 (quoting United States v. Carnes, 22 F.4th 743, 749 (8th Cir. 2022)).

-5-

Following a narrowing construction to require a temporal nexus between firearm possession and regular drug use, this Court has rejected facial Fifth Amendment void-for-vagueness challenges to § 922(g)(3). See, e.g., United States v. Madden, 135 F.4th 629, 631 (8th Cir. 2025). Thus, Ledvina's facial challenge is foreclosed by precedent. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."). This Court has also rejected as-applied vagueness challenges when a defendant admits that he frequently used marijuana and knew that he was a marijuana user when he possessed a firearm. See United States v. Deng, 104 F.4th 1052, 1055 (8th Cir. 2024).

Ledvina's stipulation of facts and the exhibits admitted at trial foreclose his as-applied challenge. Ledvina admitted that he "was using cocaine and marijuana during the same time that he was in possession of the above-mentioned firearms." And "[b]etween at least March 2022 and July 2022, [Ledvina] used marijuana at least five to six times per week." Ledvina also admitted that in August 2022, he "continued to consistently use marijuana." Ledvina further admitted that "[i]n March, April, May, June, July, and August of 2022, [he] was in possession of firearms" and he "knew he was using controlled substances, including marijuana, THC, and cocaine in March, April, May, June, July, and August 2022." Lastly, Ledvina admitted that between March 2022 and August 11, 2022, he did not have a prescription from a licensed physician for marijuana, THC, or cocaine.

Ledvina's argument that the government only established that he was a user of controlled substances, not that he was an unlawful user is unavailing. The stipulated facts establish frequent controlled substance use by Ledvina. They establish Ledvina's knowledge that he did not have a prescription for the drugs he was using. In addition, the district court, reciting 10 examples in its decision, found that the coded language used by Ledvina in text messages he sent to others demonstrated an attempt to conceal his drug use and possession and showed knowledge that the drugs Ledvina was using and possessing were unlawful. Ledvina has not demonstrated that any of the district court's findings were clearly erroneous.

On this record, Ledvina cannot show § 922(g)(3) is unconstitutionally vague as applied to him.

Ledvina also contends § 924(a)(1)(A) is unconstitutionally vague, asserting in his opening brief in a conclusory manner that the same analysis used in § 922(g)(3) applies with equal force. Despite not developing his argument in any meaningful way, Ledvina faults the government in his reply brief for ignoring his point that "if 'unlawful user' is unconstitutionally vague in one context, it is unconstitutionally vague in both."

Section 924(a)(1)(A) does not contain the words "unlawful user." "[A] conviction under § 924(a)(1)(A) requires only that a defendant knowingly make a false statement with respect to information that the law requires a federally licensed firearms dealer to keep." United States v. Lehman, 8 F.4th 754, 757 (8th Cir. 2021). The relevant conduct is knowingly making a false statement. Id. Ledvina has not developed any meaningful argument showing how the statute "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson, 576 U.S. at 595.

As applied to the facts and circumstances in Ledvina's case, a question on ATF Form 4473 asked Ledvina whether he was "an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance." Immediately below the question was an explicit warning notifying Ledvina that "[t]he use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." Despite the warning and Ledvina's knowledge that he had used controlled substances in March, April, May, June, and July 2022, Ledvina answered "no." The stipulated facts establish Ledvina knew he was a frequent controlled substance user, including marijuana, THC, and cocaine in March, April, May, June, July, and August 2022; he had very recently used marijuana when he completed ATF Form 4473 such that an employee of the licensed firearms dealer smelled the odor of marijuana emanating from Ledvina and

reported this fact to the authorities; and the plain language on ATF Form 4473 instructed Ledvina that the use or possession of marijuana was unlawful under federal law. Text messages using coded language recovered from Ledvina's phone by law enforcement further establish that Ledvina knew his use and possession of controlled substances was unlawful. On this record, Ledvina cannot show § 924(a)(1)(A) is unconstitutionally vague as applied to him.

2.     <u>Second Amendment</u>

Ledvina raises both a facial and as-applied challenge to 18 U.S.C. § 922(g)(3). His facial challenge is foreclosed by our precedent. See <u>United States v. Grubb</u>, 135 F.4th 604, 606 (8th Cir. 2025) (citing <u>United States v. Seay</u>, 620 F.3d 919, 925 (8th Cir. 2010)); <u>United States v. Veasley</u>, 98 F.4th 906, 918 (8th Cir. 2024) (adding to <u>Seay</u>'s analysis with a review of historical analogues). An as-applied challenge may be available. See <u>Perez</u>, 145 F.4th at 804; <u>Cooper</u>, 127 F.4th at 1098. A court reviewing an as-applied challenge is asked to declare a statute unconstitutional "on the facts of a particular case." <u>Lehman</u>, 8 F.4th at 457. In other words, unlike a facial challenge, which challenges the law as written, an as-applied challenge considers whether the "application to a particular person under particular circumstances deprived that person of a constitutional right." <u>Id.</u>

The district court's ruling on Ledvina's as-applied challenge predated this Court's decisions in <u>Cooper</u> and <u>Perez</u>. In <u>Perez</u>, this Court recognized that "certain categories of active drug users—classified either by drug type or the frequency or manner of a defendant's use—may be disarmed consistent with the Second Amendment if the government shows that any member of that 'class' either 'demonstrate[s] disrespect for legal norms of society' or would pose 'an unacceptable risk of danger if armed.'" 145 F.4th at 807 (quoting <u>United States v. Jackson</u>, 110 F.4th 1120, 1127-28 (8th Cir. 2024)). The Court in <u>Cooper</u> identified at least two situations when § 922(g)(3) is consistent with the Second Amendment, which are: when a defendant's use of a controlled substance (1) made the defendant act like someone who is both mentally ill and dangerous, or (2) would cause the

-8-

defendant to induce terror, or pose a credible threat to the physical safety of others with a firearm. 127 F.4th at 1096 (cleaned up). Without this guidance, the district court did not consider these circumstances or whether Ledvina's drug use placed him in a category of people "'presenting a special danger of misuse' sufficient to justify disarmament irrespective of any individualized showing of dangerousness." Perez, 145 F.4th at 808 (quoting Jackson, 110 F.4th at 1129).

Without more, drug use generally or marijuana use specifically does not automatically extinguish a person's Second Amendment right. Id. (citing Cooper, 127 F.4th at 1097, 1098 n. 3). Consistent with Cooper and Perez, we vacate Ledvina's § 922(g)(3) conviction and remand for the district court to reassess Ledvina's as-applied challenge in accordance with our recent precedents.

Ledvina has submitted a *pro se* brief. When a party is represented by counsel, the Court typically does not accept *pro se* briefs. United States v. Robertson, 883 F.3d 1080, 1087 (8th Cir. 2018). We exercise our discretion to enforce our policy against multiple filings and decline to consider additional claims or issues that Ledvina raised in his *pro se* brief. Id.; see United States v. Miranda-Zarco, 836 F.3d 899, 901-02 (8th Cir. 2016) (noting this Court's discretion to review *pro se* supplemental briefs).

## III.  CONCLUSION

We vacate Ledvina's conviction under § 922(g)(3) and remand to the district court to reassess his Second Amendment as-applied challenge. We affirm the district court's decision on his other claims as well as his conviction under § 924(a)(1)(A).

STRAS, Circuit Judge, concurring.

Let me tell you a story. A man walks into a bar. Usually a joke would follow, but this is no laughing matter. When the man bellies up to the bar for dinner, he

orders his usual: a cheeseburger and a seltzer. Not any ordinary seltzer, mind you, but one with THC, which he has ordered a handful of times before. Little does he know that getting back into his vehicle, where he stores a locked, unloaded pistol, will mean he is committing a federal crime, one punishable by up to 15 years in prison. *See* 18 U.S.C. §§ 922(g)(3), 924(a)(8); *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022); *see also United States v. Hiebert*, 30 F.3d 1005, 1008–09 (8th Cir. 1994) (concluding that a defendant constructively possessed a firearm because he had "control or dominion over it . . . as it was found in the vehicle that he was driving").

The dissent seems to think that this man can—and maybe should—be convicted. Or perhaps drinking a spiked THC beverage is not "relevantly similar" to habitual drunkenness, which is just another way of stating an as-applied challenge. *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 29 (2022)). What we do know is that the dissent's "categorical[]" approach is inconsistent with the Second Amendment and how constitutional litigation typically works.[2] *Post*, at 17; *see United States v. Cooper*,

---

[2]So inconsistent, in fact, that not a single other circuit has adopted it. *See United States v. Harris*, 144 F.4th 154, 165 (3d Cir. 2025) (remanding for the district court to consider an as-applied challenge to § 922(g)(3) based on "how [the defendant's] drug use affected his mental state and riskiness"); *United States v. Daniels*, 124 F.4th 967, 974–76 (5th Cir. 2025) (concluding that § 922(g)(3) was unconstitutional as applied); *United States v. VanOchten*, 150 F.4th 552, 560 (6th Cir. 2025) (explaining that courts should consider whether the defendant "poses a clear risk to others if armed" when evaluating an as-applied challenge to § 922(g)(3)); *United States v. Seiwert*, 152 F.4th 854, 869 (7th Cir. 2025) (rejecting an as-applied § 922(g)(3) challenge because the defendant "was persistently and presently impaired during the periods alleged in the indictment"); *see also United States v. Harrison*, 153 F.4th 998, 1034–35 (10th Cir. 2025) (remanding for the district court to determine whether § 922(g)(3) is constitutional as applied to "non-intoxicated marijuana users"); *Fla. Comm'r of Agric. v. Att'y Gen. of U.S.*, 148 F.4th 1307, 1320–21 (11th Cir. 2025) (concluding that the plaintiffs plausibly alleged that § 922(g)(3) is unconstitutional "as applied to medical marijuana users"). *But see United States v. Stennerson*, 150 F.4th 1276, 1285 (9th Cir. 2025) (leaving the as-applied-challenge question "for another day").

127 F.4th 1092 (8th Cir. 2025); *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024); *see also Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (explaining that "courts usually handle constitutional claims *case by case*, not en masse" (emphasis added)).

COLLOTON, Chief Judge, concurring in part and dissenting in part.

There is nothing unlawful about appellant Ledvina's conviction for possession of a firearm as an unlawful user of drugs under 18 U.S.C. § 922(g)(3). The majority does not say that the conviction is invalid. Yet rather than decide the legal question presented on appeal, the majority vacates the conviction and remands for further proceedings that are unwarranted and unnecessary.

The state of the law in this circuit concerning § 922(g)(3) is untenable. In appeal after appeal, the court refuses to decide whether the statute is constitutional as applied to unlawful drug users. The court should decide the question presented in this case and affirm the judgment.

Section 922(g)(3) forbids possession of a firearm by a person who is an unlawful user of or addicted to any controlled substance. In the Act that included § 922(g), Congress "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). Drug users and drug addicts—like convicted felons and the mentally ill—constitute a group of persons whom Congress identified as presenting a special danger of misuse of firearms.

To qualify as an unlawful user of controlled substance, a person must use drugs habitually or regularly, and the drug use must be current not past. *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003), *vacated*, 543 U.S. 1099, *reinstated*, 414 F.3d 942 (8th Cir. 2005) (per curiam). A leading case cited in *Turnbull*, for example, upheld a conviction where the defendant's "drug use was sufficiently consistent, prolonged, and close in time to his gun possession to put him

-11-

on notice that he qualified as an unlawful user of drugs." *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001) (internal quotation omitted). Another formulation cited by this court in *Turnbull* requires the government to establish "a pattern of use and recency of use." *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002).

Ledvina argues that he enjoyed a constitutional right to possess firearms despite his regular drug use. The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Second Amendment confers an individual right to keep and bear arms, but the right is not unlimited, and Congress may forbid possession by certain categories of persons. *Id*. at 626; *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 2708 (2025). *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), reaffirmed *Heller* and "made the constitutional standard endorsed in *Heller* more explicit." *Id*. at 21, 26, 31. *Heller* and *Bruen* explained that the Second Amendment allows regulation that is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 17; *Heller*, 554 U.S. at 627.

In *United States v. Rahimi*, 602 U.S. 680 (2024), the Court emphasized two propositions that had been misunderstood by some judges of the courts of appeals. First, a law regulating firearms need not "precisely match its historical precursors," and the government may show that a statute passes constitutional muster without identifying an "historical twin." *Id*. at 692, 701. The proper analysis considers whether "the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Id*. at 692. Second, the Court made clear that *Heller* and *Bruen* do not preclude categorical gun regulations, saying "we do not suggest that the Second Amendment prohibits enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id*. at 698 (citing *Heller*, 554 U.S. at 626).

Congress concluded that drug addicts and drug users present a special danger of misuse, and the prohibition on the possession of guns by those persons is consistent with the principles underlying the Nation's regulatory tradition. A

convincing array of historical analogues shows that habitual drunkards were subject to confinement and surety bonds on a temporary basis while they were engaged in the regular consumption of a mind-altering drug—alcohol. This court recently acknowledged that it has not considered this important historical evidence, *see United States v. Perez*, 145 F.4th 800, 806 n.4 (8th Cir. 2025), and it is high time to recognize its force in establishing the constitutionality of § 922(g)(3).

In 1606, England banned drunkenness, declaring it "the roote and foundacion of many other enormious Synnes, as Bloodshed Stabbinge Murder . . . and such lyke." 4 Jac. 1, c. 5 (1606). In 1679 and 1691, the New Hampshire and Virginia governments adopted similar bans on drunkenness. Act of Mar. 16, 1679, 1 *Laws of New Hampshire* 21 (Albert Stillman Batchellor ed., 1904); Act of Apr. 16, 1691, Act XI, 3 *Statutes at Large; Being a Collection of All Laws of Virginia, from the First Session of the Legislature* 73 (William Waller Hening ed., 1823).

Eighteenth century American legislatures enacted laws classifying "common drunkards" as vagrants and subjecting them to confinement in jails or workhouses. *See* Act of Oct. 12, 1727, *The Public Records of the Colony of Connecticut from May, 1726, to May, 1735, Inclusive* 128 (Charles J. Hoadly ed., 1873); Act of June 29, 1700, ch. 8, § 2, 1 *Acts and Resolves of the Province of Massachusetts Bay* 378 (1869); Act of May 14, 1718, ch. 15, 2 *Laws of New Hampshire* 266 (Albert Stillman Batchellor ed., 1913); Act of June 10, 1799, ch. 806, §§ 1, 3, *Acts of the Twenty-Third General Assembly of the State of New-Jersey* 561-63 (1821). By the nineteenth century, at least ten more States enacted similar statutes.[3]

---

[3]*See* Brief for the United States at 20 n.10, *United States v. Hemani*, No. 24-1234 (U.S. Dec. 12, 2025) (citing Act of Dec. 15, 1865, No. 107, § 1, 1865-1866 Ala. Acts 116; Act to Establish a Penal Code, Tit. XVII, § 1014, *Revised Statutes of Arizona* 753-754 (1887); § 647, 2 *The Codes and Statutes of the State of California* 1288 (Theodore H. Hittell ed., 1876); Act of Feb. 4, 1885, § 1, 1884-1885 Idaho Terr. Gen. Laws 200; Act of Feb. 22, 1825, ch. 297, § 4, 1825 Me. Pub. Acts 1034; Act of Feb. 22, 1881, § 1, 1881 Mont. Terr. Laws 81-82; Act of Mar. 7, 1873, ch. 114, § 1, 1873 Nev. Stat. 189-190; Act of June 2, 1871, No. 1209, § 2, 1871 Pa. Laws 1301-1302; Act of Mar. 15, 1865, ch. 562, §§ 1-2, 1865 R.I. Acts & Resolves

Some jurisdictions also treated habitual drunkards in the same manner as the mentally ill. Several States provided for civil confinement of habitual drunkards "in the same manner as in case of lunatics" until the drunkards presented "proof of a permanent reformation," which generally meant refraining from use of intoxicating drinks for at least one year. Amos Dean, *Principles of Medical Jurisprudence* 590 (1850). An 1836 statute in Pennsylvania placed habitual drunkards "on precisely the same footing" as lunatics, and removed their power to control their estates. *Imhoff v. Witmer*, 31 Pa. 243, 244-45 (Pa. 1858). An 1873 Massachusetts Act excepted common drunkards—along with lunatics, vagabonds, and those convicted of infamous crimes—from service in the militia. An Act Concerning the Militia, ch. 313, § 1, 1873 Mass. Acts 760. In all, at least twenty-two States and the District of Columbia provided that habitual drunks could be committed to asylums or placed in the custody of guardians in the same manner as the mentally ill.[4]

---

197; Act of Feb. 18, 1876, § 378, *The Compiled Laws of the Territory of Utah* 647 (1876)).

[4]*See* Brief for the United States at 21 n.12, *United States v. Hemani*, No. 24-1234 (U.S. Dec. 12, 2025) (citing Act of Mar. 30, 1876, ch. 40, § 8, 19 Stat. 10 (District of Columbia); Ark. Rev. Stat., ch. 78, § 1, at 456 (William M. Ball & Sam C. Roane eds., 1838); Act of Apr. 1, 1870, ch. 426, § 2, 1869-1870 Cal. Stat. 585-586; Act of July 25, 1874, ch. 113, § 1, 1874 Conn. Pub. Acts 256; Ga. Code pt. 2, tit. 2, ch. 3, Art. 2, § 1803, at 358 (R.H. Clark et al. eds., 1861); Act of Feb. 21, 1872, § 1, 1872 Ill. Laws 477; Act of May 1, 1890, ch. 42, § 1, 1890 Iowa Acts 67; Act of Mar. 2, 1868, ch. 60, § 5, *The General Statutes of the State of Kansas* 553 (John M. Price et al. eds., 1868); Act of Mar. 28, 1872, ch. 996, §§ 10-11, 1872 Ky. Acts, Vol. 2, at 523-524; Act of July 8, 1890, No. 100, § 1, 1890 La. Acts 116; Act of Mar. 5, 1860, ch. 386, §§ 6-7, 1860 Md. Laws; Act of June 18, 1885, ch. 339, §§ 1-3, 1885 Mass. Acts 790; Act of Apr. 12, 1827, § 1, 1827 Mich. Terr. Laws 489-90; Minn. Terr. Rev. Stat. ch. 67, § 12, at 278 (1851); Act of Apr. 17, 1873, ch. 57, §§ 1, 3, 1873 Miss. Laws 61-62; Act of Mar. 3, 1853, ch. 89, § 1, 1853 N.J. Acts 237; Act of Feb. 7, 1856, ch. 38, § 1, 1855-1856 N.M. Terr. Laws 94; Act of Mar. 27, 1857, ch. 184, § 9, 1857 N.Y. Laws, Vol. 1, at 431; Act of Jan. 5, 1871, § 1, 68 *Ohio General and Local Laws and Joint Resolutions* 6 (1871); Act of Feb. 1, 1866, No.

"[A]t the Founding, the consensus was that surety laws extended to all 'common drunkards.'" *United States v. Harris*, 144 F.4th 154, 163 (3d Cir. 2025), *petition for cert. filed* (U.S. Sept. 30, 2025) (No. 25-372). Legislatures required drunkards to post bond due to the risk of future misbehavior. *E.g.*, An Act Against Breaking the Peace, *Acts and Laws of the State of Connecticut, in America* 189 (1784); Act of Dec. 16, 1812, *A Digest of the Laws of the Corporation of the City of Washington to the First of June, 1823* 141 (1823); *A Digest of the Laws of Maryland* 206 (Thomas Herty ed., 1799). If a habitual drunkard refused to "enter into security for good behavior for a reasonable time," he was committed to hard labor or imprisonment. *A Digest of the Laws of the Corporation of the City of Washington to the First of June, 1823*, at 141; *see also* James Parker, *Conductor Generalis: Or, the Office, Duty and Authority of Justices of the Peace, High-Sheriffs, Under-Sheriffs, Coroners, Constables, Gaolers, Jury-Men, and Overseers of the Poor* 422 (1764).

These historical analogues establish that Congress's prohibition on gun possession by drug addicts and regular drug users is consistent with the principles underlying the Nation's tradition. Both habitual drunkenness and unlawful drug use under § 922(g)(3) involve the regular use of a mind-altering substance. Congress concluded that drug addicts and regular drug users present a special risk of misusing firearms.

The prohibition on gun possession, like the burden of the surety bonds that applied to habitual drunkards, is of limited duration, because it ends when a drug user breaks the habit. *See Rahimi*, 602 U.S. at 699. The prohibition is relevantly similar in mitigating the risk that habitual abusers of alcohol or drugs will misuse firearms. Habitual drunkards historically were subject to even greater restrictions than disarmament—jailing or civil commitment, which necessarily served to disarm the subject. If those restrictions were a permissible response to habitual use of a

11, § 10, 1866 Pa. Laws 10; Act of Aug. 18, 1876, ch. 112, § 147, 1876 Tex. Gen. Laws 188; Act of Mar. 17, 1870, ch. 131, § 1, 1870 Wis. Gen. Laws 197).

mind-altering substance, then the lesser restriction of temporary disarmament is also permissible. *See id*.; *Jackson*, 110 F.4th at 1127.

The problem in this circuit arises from two panel decisions that failed to consider all of the relevant historical evidence. In *United States v. Veasley*, 98 F.4th 906 (8th Cir.), *cert. denied*, 145 S. Ct. 304 (2024), the court rejected a facial challenge to § 922(g)(3). As one judge pointed out, *id*. at 918 (Gruender, J., concurring in the judgment), that holding was dictated by the court's post-*Heller* decision in *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010). A facial challenge fails if the statute is constitutional in any of its applications; once that is established, nothing more need be said. But the *Veasley* majority waxed on in dicta and asserted that for intoxicated persons, the focus historically "was on the use of a firearm, not its possession." 98 F.4th at 911. The *Veasley* panel, however, did not address the more substantial restrictions traditionally applicable to habitual drunkards.

In a follow-on case, a panel of this court asserted that Congress cannot constitutionally prohibit drug users as a category from possessing firearms on the ground that they are dangerous. *United States v. Cooper*, 127 F.4th 1092 (8th Cir.), *cert. denied*, 146 S. Ct. 348 (2025). The *Cooper* opinion, like the *Veasley* dicta, referred to a few laws governing persons at the moment of intoxication but again neglected to consider the historical tradition of regulation applicable to habitual drunkards. Instead, according to the *Cooper* opinion, courts are supposed to conduct an "individualized assessment" and ask in each prosecution (1) whether using drugs made a defendant "act like someone who is both mentally ill and dangerous," or (2) whether a defendant "induce[d] terror" or "pose[d] a credible threat to the physical safety of others." *Id*. at 1096 (internal quotation omitted).

This test is both ahistorical and impractical. The Due Process Clause requires adequate notice to persons, including drug users, about what possession of firearms is unlawful. But under the *Cooper* individualized-assessment approach, a drug user will find out only retrospectively—after he is convicted of a crime—whether a judge believes that he has "acted like someone who is both mentally ill and dangerous" or

whether a judge thinks that he "induced terror" or "posed a credible threat." Prosecutors will be hard pressed to prove the *mens rea* element of the offense when the law fails to give clear notice about which regular drug users act unlawfully. *See Rehaif v. United States*, 588 U.S. 225, 227 (2019). Law enforcement officers cannot readily identify which violators of § 922(g)(3) may be arrested and prosecuted. What does it mean to act like someone who is mentally ill? How much risk is required before a drug user with a gun poses a credible threat or induces terror? The *Cooper* test is indecipherable to a person of ordinary intelligence and tantamount to rendering the statute unenforceable and void for vagueness. But there is no such conundrum once the court recognizes that the Second Amendment allows Congress to act categorically with respect to well-defined groups of persons who present a special danger of misuse.

Having announced its new constitutional rule, the *Cooper* panel then declined to apply it. 127 F.4th at 1098. The parties had developed the factual record in a stipulated bench trial and jointly asked the court of appeals to resolve the as-applied challenge. But the panel refused to do so, remanded to the district court, and placed the case in an interlocutory posture that avoided further review. There was no sound basis for the *Cooper* panel to avoid making a decision.

The consequence has been paralysis in the circuit. The panel in *Perez*, citing the *Cooper* panel's remand, felt bound to remand the *Perez* case without deciding the as-applied challenge. 145 F.4th at 809. Now this panel, citing *Cooper* and *Perez*, refuses to decide another as-applied challenge and remands again. *Ante*, at 9.

Whether § 922(g)(3) is constitutional as-applied in a particular case is a legal question that this court has a duty to decide. The court should accept responsibility for whatever rule it fashions and apply it. Or, as here, the court should consider the historical analogues that it missed in *Cooper*, *see Perez*, 145 F.4th at 806 n.4, and conclude that Congress permissibly prohibited the possession of firearms by drug addicts and regular unlawful drug users—one of the "categories of persons thought by a legislature to present a special danger of misuse." *Rahimi*, 602 U.S. at 698.

The continuing cycle of remands, and the uncertainty that it has engendered, ill serves the rule of law in the circuit.

The record in this case is fully developed and shows that appellant Ledvina smoked marijuana in March, April, May, June, and July 2022 while possessing firearms in his residence. In August 2022, officers found Ledvina in his car with a loaded pistol on the floorboard, a partially smoked cannabis roach in front of the gear shift, and a plastic bag containing marijuana in the console. Toxicology results from a urine sample showed that Ledvina had used cocaine and marijuana over the past several days. In Ledvina's residence, officers found a loaded pistol leaning against a coffee table that held a small quantity of cannabis, a digital scale, and rolling paper. They found thirteen grams of marijuana under a couch. In the bedroom, officers found three more firearms next to a vanity that contained a large digital scale and 137 grams of cannabis in glass jars. The district court found beyond a reasonable doubt that Ledvina possessed firearms as an unlawful user of controlled substances. At sentencing, a witness augmented the record by describing an incident when Ledvina accidentally discharged a firearm inside his home while using cocaine.

Yet the majority is unwilling to decide whether § 922(g)(3) is constitutional as applied to Ledvina. The majority instead vacates the conviction and suggests the possibility that Ledvina enjoyed a constitutional right to possess the firearms under these circumstances. The court should decide the questions presented on this appeal and affirm the judgment.

_____